Melvin NICKERSON and Naomi W.
Nickerson, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 82–1323.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1982.
Decided Feb. 22, 1983.

Edward A. Williams, Williams & Hub-
bard, Chicago, Ill., for petitioners-appel-
lants.

Melvin Clark, Asst. Atty. Gen., Dept. of
Justice, Tax Div., Washington, D.C., for re-
spondent-appellee.

Before PELL and BAUER, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

PELL, Circuit Judge.

Petitioners appeal the judgment of the United States Tax Court finding that profit was not their primary goal in owning a dairy farm. Based on this finding the tax court disallowed deductions for losses incurred in renovating the farm. The sole issue presented for our review is whether the tax court's finding regarding petitioners' motivation was clearly erroneous.

## I. Facts

Melvin Nickerson (hereinafter referred to as petitioner) was born in 1932 in a farming community in Florida. He worked evenings and weekends on his father's farm until he was 17. Petitioner entered the field of advertising after attending college and serving in the United States Army. During the years relevant to this case he was self-employed in Chicago, serving industrial and agricultural clients. His wife, Naomi W. Nickerson, was a full-time employee of the Chicago Board of Education. While petitioners were not wealthy, they did earn a comfortable living.

At the age of forty, petitioner decided that his career in the "youth oriented" field of advertising would not last much longer, and he began to look for an alternative source of income for the future. Petitioners decided that dairy farming was the most desirable means of generating income and examined a number of farms in Michigan and Wisconsin. After several years of searching, petitioners bought an 80-acre farm in Door County, Wisconsin for $40,000. One year later they purchased an additional 40 acres adjoining the farm for $10,000.

The farm, which had not been run as a dairy for eight years, was in a run-down condition. What little equipment was left was either in need of repair or obsolete. The tillable land, about 60 acres, was planted with alfalfa, which was at the end of its productive cycle. In an effort to improve this state of affairs petitioners leased the land to a tenant-farmer for $20 an acre and an agreement that the farmer would convert an additional ten acres a year to the cultivation of a more profitable crop. At the time of trial approximately 80 acres were tillable. The rent received from the farmer was the only income derived from the farm.

Petitioner visited the farm on most weekends during the growing season and twice a month the rest of the year. Mrs. Nickerson and the children visited less frequently. The trip to the farm requires five hours of driving from petitioners' home in Chicago. During these visits petitioner and his family either worked on their land or assisted neighboring farmers. When working on his own farm petitioner concentrated his efforts on renovating an abandoned orchard and remodeling the farm house. In addition to learning about farming through this experience petitioner read a number of trade journals and spoke with the area agricultural extension agent.

Petitioners did not expect to make a profit from the farm for approximately 10 years. True to their expectations, petitioners lost $8,668 in 1976 and $9,872.95 in 1977. Although they did not keep formal books of account petitioners did retain receipts and cancelled checks relating to farm expenditures. At the time of trial, petitioners had not yet acquired any livestock or farm machinery. The farm was similarly devoid of recreational equipment and had never been used to entertain guests.

The tax court decided that these facts did not support petitioners' claim that the primary goal in operating the farm was to make a profit. We will examine the tax court's reasoning in more detail after setting out the relevant legal considerations.

## II. The Statutory Scheme

Section 162(a) of the Internal Revenue Code of 1954 allows deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carry-

* William H. Timbers, Senior Circuit Judge of the Second Circuit, is sitting by designation.

ing on any trade or business." Section 183, however, limits the availability of these deductions if the activity "is not engaged in for profit" to deductions that are allowed regardless of the existence of a profit motive and deductions for ordinary and necessary expenses "only to the extent that the gross income derived from such activity for the taxable year exceeds [otherwise allowable deductions]." I.R.C. § 183(b)(2). The deductions claimed by petitioners are only allowable if their motivation in investing in the farm was to make a profit.

▆ Petitioners bear the burden of proving that their primary purpose in renovating the farm was to make a profit.[1] *Golanty v. Commissioner,* 72 T.C. 411 (1979), aff'd mem., 647 F.2d 170 (9 Cir.1981); *Allen v. Commissioner,* 72 T.C. 28 (1979). In meeting this burden, however, "it is sufficient if the taxpayer has a bona fide expectation of realizing a profit, regardless of the reasonableness of such expectation." *Golanty v. Commissioner,* 72 T.C. at 425–26; *Allen v. Commissioner,* 72 T.C. at 33; *Dunn v. Commissioner,* 70 T.C. 715, 720 (1978), aff'd, 615 F.2d 578 (2nd Cir.1980). Although petitioners need only prove their sincerity rather than their realism the factors considered in judging their motivation are primarily objective. In addition to the taxpayer's statements of intent, which are given little weight for obvious reasons, the tax court must consider "all facts and circumstances with respect to the activity," including the following:

(1) *Manner in which the taxpayer carries on the activity.* The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. . . .

(2) *The expertise of the taxpayer or his advisors.* Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert

therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. . . .

(3) *The time and effort expended by the taxpayer in carrying on the activity.* The fact that the taxpayer devotes much of his personal time and effort to carrying on the activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. . . . The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity.

(4) *Expectation that assets used in activity may appreciate in value. . . .*

(5) *The success of the taxpayer in carrying on other similar or dissimilar activities. . . .*

(6) *The taxpayer's history of income or losses with respect to the activity. . . .*

(7) *The amount of occasional profits, if any, which are earned. . . .*

(8) *The financial status of the taxpayer. . . .*

(9) *Elements of personal pleasure or recreation.* The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. On the other hand, a profit motivation may be indicated where an activity lacks any appeal other than profit. It is not, however, necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits. . . .

Treas.Reg. § 1.183–2(b)(1)–(9). None of these factors is determinative, nor is the decision to be made by comparing the number of factors that weigh in the taxpayer's favor with the number that support the Commissioner. *Id.* There is no set formula

---

1. The Code does provide a presumption that a taxpayer engaged in an activity with a bona fide profit motive when a profit is realized two of five consecutive years. I.R.C. § 183(d). Because of petitioners' consistent losses this is not available.

for divining a taxpayer's true motive, rather "[o]ne struggles in vain for any verbal formula that will supply a ready touchstone. The standard set by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Nonetheless, we are given some guidance by the enumerated factors and by the Congressional purpose in enacting section 183.

The legislative history surrounding section 183 indicates that one of the prime motivating factors behind its passage was Congress' desire to create an objective standard to determine whether a taxpayer was carrying on a business for the purpose of realizing a profit or was instead merely attempting to create and utilize losses to offset other income. *Jasionowski v. Commissioner,* 66 T.C. 312, 321 (1976).

Congressional concern stemmed from a recognition that "[w]ealthy individuals have invested in certain aspects of farm operations solely to obtain 'tax losses'—largely bookkeeping losses—for use to reduce their tax on other income. . . . One of the remarkable aspects of the problem is pointed up by the fact that persons with large non-farm income have a remarkable propensity to lose money in the farm business." S.Rep. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Ad. News 2027, 2376. With this concern in mind we will now examine the decision of the tax court.

### III. Decision of the Tax Court

The tax court analyzed the relevant factors and determined that making a profit was not petitioners' primary goal in engaging in farming. The court based its decision on a number of factors that weighed against petitioners. The court found that they did not operate the farm in a business-like manner and did not appear to have a concrete plan for improving the profitability of the farm. The court believed that these difficulties were attributable to petitioners' lack of experience, but did not discuss the steps actually taken by Melvin Nickerson to gain experience in farming.

The court found it difficult to believe that petitioners actually believed that the limited amount of time they were spending at the farm would produce a profit given the dilapidated condition of the farm. Furthermore, the court found that petitioners' emphasis on making the farm house habitable rather than on acquiring or repairing farm equipment was inconsistent with a profit motive. These factors, combined with the consistent history of losses borne by petitioners, convinced the court that "petitioner at best entertains the hope that when he retires from the advertising business and can devote his complete attention to the farming operation, he may at that time expect to produce a profit." The court did not think that this hope rose to the level of a bona fide expectation of profit.

### IV. Review of the Tax Court's Findings

▮▮▮ Whether petitioners intended to run the dairy farm for a profit is a question of fact, and as such our review is limited to a determination of whether the tax court was "clearly erroneous" in determining that petitioners lacked the requisite profit motive.[2] Fed.R.Civ.P. 52(a); *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 24 L.Ed.2d 1218 (1960); *Godfrey v. Commissioner,* 335 F.2d 82, 84 (6th Cir.1964), *cert. denied,* 379 U.S. 966, 85 S.Ct. 660, 13 L.Ed.2d 560. This standard of review applies although the only dispute is over the proper interpretation of uncontested facts. *Commissioner v. Duberstein,* 363 U.S. at 291, 80 S.Ct. at 1199. It is not enough, then, that we would have reached a different conclusion had the decision been ours to make. Rather, "[a] finding is 'clearly erroneous' when although there is evidence to

---

**2.** Petitioners also raise the legal argument that the court erred in considering the farm's history of losses. We do not agree. A history of losses is relevant to the determination of whether a taxpayer actually expected to make a profit from the continued operation of a business or other activity. *Allen v. Commissioner,* 72 T.C. at 34; Treas.Reg. § 1.183–2(b)(9).

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). This is one of those rare cases in which we are convinced that a mistake has been made.

■ Our basic disagreement with the tax court stems from our belief that the court improperly evaluated petitioners' actions from the perspective of whether they sincerely believed that they could make a profit from their current level of activity at the farm. On the contrary, petitioners need only prove that their current actions were motivated by the expectation that they would later reap a profit, in this case when they finished renovating the farm and began full-time operations. It is well established that a taxpayer need not expect an immediate profit; the existence of "start up" losses does not preclude a bona fide profit motive.

> The presence of losses in the formative years of a business ... is not inconsistent with an intention to achieve a later profitable level of operation, bearing in mind, however, that the goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years.

*Bessenyey v. Commissioner,* 45 T.C. 261, 274 (1965), *aff'd,* 379 F.2d 252 (2nd Cir.1967), *cert. denied* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283; *see also Benz v. Commissioner,* 63 T.C. 375, 384 (1974). The tax court was apparently of the view that petitioners' decision to spread these start-up losses over a period of years before starting full-time operation of the farm was inconsistent with a bona fide intention to make a profit. It is uncontested, however, that substantial time, effort, and money were needed to return the farm to a profitable operation, petitioners' only choice being when they would make this investment. We see no basis for distinguishing petitioners' actions from a situation in which one absorbs larger losses over a shorter period of time by beginning full-time operations immediately. In either situation the taxpayer stands an equal chance of recouping start-up losses. In fact, it seems to us a reasonable decision by petitioners to prepare the farm before becoming dependent upon it for sustenance. Keeping in mind that petitioners were not seeking to supplement their existing incomes with their current work on the farm, but rather were laying the ground work for a contemplated career switch, we will examine the factors relied upon by the tax court.

■ The tax court found that the amount of time petitioners devoted to the farm was inadequate. In reaching this conclusion the court ignored petitioners' agreement with the tenant-farmer under which he would convert 10 acres a year to profitable crops in exchange for the right to farm the land. In this situation the limited amount of time spent by petitioners, who were fully employed in Chicago, is not inconsistent with an expectation of profit. "The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity." Treas.Reg. § 1.183–2(b)(3). There is no indication in the record that the tenant-farmer was not qualified to convert the land, or that 10 acres a year was an unreasonable amount. In these circumstances the tax court erred in inferring a lack of profit motive from the amount of time personally spent by petitioners on renovating the farm.

The court also rested its decision on the lack of a concrete plan to put the farm in operable condition. Once again, this ignores petitioners' agreement with the tenant-farmer concerning reclamation of the land. Under this agreement the majority of the land would be tillable by the time petitioners were prepared to begin full-time farming. The tax court also believed that petitioners' decision to renovate the farm house and orchard prior to obtaining farm equipment evidenced a lack of profit mo-

tive. As petitioners planned to live on the farm when they switched careers refurbishing the house would seem to be a necessary first step. The court also failed to consider the uncontradicted testimony regarding repairs made to the hay barn and equipment shed, which supported petitioners' contention that they were interested in operating a farm rather than just living on the land. Additionally, we fail to understand how renovating the orchard, a potential source of food and income, is inconsistent with an expectation of profit.

The tax court took into account the history of losses in considering petitioners' intentions. While a history of losses is relevant, in this case little weight should be accorded this factor. Petitioners did not expect to make a profit for a number of years, and it was clear from the condition of the farm that a financial investment would be required before the farm could be profitable. Accordingly, that petitioners lost money, as they expected, does not cast doubt upon the sincerity of their motivation. In this regard, the tax court should have also considered the fact that petitioners were reaping what profit they could through leasing the land to a local farmer.

The court believed that most of petitioners' problems were attributable to their lack of expertise. While lack of expertise is relevant, efforts at gaining experience and a willingness to follow expert advice should also be considered. Treas.Reg. 1.183–2(b)(2). The court here failed to consider the uncontradicted evidence that Melvin Nickerson read trade journals and Government-sponsored agricultural newsletters, sought advice from a state horticultural agent regarding renovation of the orchard and gained experience by working on neighboring farms. In addition, petitioners' agreement with the tenant-farmer was entered into on the advice of the area agricultural extension agent. To weigh petitioners' lack of expertise against them without giving consideration to these efforts effectively precludes a bona fide attempt to change careers. We are unwilling to restrict petitioners in this manner and believe that a proper interpretation of these facts supports petitioners' claims.

The tax court recognized that the farm was not used for entertainment and lacked any recreational facilities, and that petitioners' efforts at the farm were "prodigious," but felt that this was of little importance. While the Commissioner need not prove that petitioners were motivated by goals other than making a profit, we think that more weight should be given to the absence of any alternative explanation for petitioners' actions. As we previously noted the standard set out by the statute is to be applied with the insight gained from a lifetime of experience as well as an understanding of the statutory scheme. Common sense indicates to us that rational people do not perform hard manual labor for no reason, and if the possibility that petitioners performed these labors for pleasure is eliminated the only remaining motivation is profit. The Commissioner has argued that petitioner was motivated by a love of farming that stems from his childhood. We find it difficult to believe that he drove five hours in order to spend his weekends working on a dilapidated farm solely for fun, or that his family derived much pleasure from the experience. Furthermore, there is no support for this contention in the record. At any rate, that petitioner may have chosen farming over some other career because of fond memories of his youth does not preclude a bona fide profit motive. Treas. Reg. § 1.183–2(b)(9). We believe that the absence of any recreational purpose strongly counsels in favor of finding that petitioners' prodigious efforts were directed at making a profit. *See Allen v. Commissioner,* 72 T.C. 28, 36 (1979); *Gregory v. United States,* 76–1 U.S. Tax Cas. (CCH) ¶ 9220 (W.D.La.1976).

Based upon these facts we conclude that the tax court erred in finding that petitioners had failed to prove a bona fide expectation of profit. We recognize that the scope of our review in this case is limited. In a similar situation the Supreme Court observed that:

Decision of the issue presented in these cases must be based ultimately on the

**408**

application of the factfinding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirms us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact.

*Commissioner v. Duberstein,* 363 U.S. at 289, 80 S.Ct. at 1198. Nonetheless, when the basic facts are not disputed and the inference drawn from them by the trier of fact is the result of an overly restrictive view of what a party must prove in order to prevail we will not hesitate to exercise our power to reverse. In this case the court erroneously concluded that petitioners were required to prove a bona fide expectation of profit from their current efforts at the farm. We think that it is sufficient that petitioners had a bona fide expectation that their current work would allow them to commence profitable farming in the future, and that the uncontested facts establish that they had this expectation.

If this were a case in which wealthy taxpayers were seeking to obtain tax benefits through the creation of paper losses we would hesitate to reverse. Before us today, however, is a family of modest means attempting to prepare for a stable financial future. The amount of time and hard work invested by petitioners belies any claim that allowing these deductions would thwart Congress's primary purpose, that of excluding "hobby" losses from permissible deductions. Accordingly, we hold that the tax court's finding was clearly erroneous and

REVERSE.