Anthony **RANCIATO** and Lucille Ranciato, Petitioners–Appellants

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent–Appellee.

853, Docket 94–4052.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1995.

Decided April 7, 1995.

operation of the business, while failing to consider other probative factors, we remand for a more complete consideration of the relevant circumstances.

## I. *Factual Background*

Anthony Ranciato opened South Sea Aquarium, Pets and Pet Supplies ("South Sea") in about 1963. The record is undisputed that the business earned a profit "in its early years," although the span of time covered by that description is not specified. The store lost money at least from 1980 through the last year of the relevant time period, 1987, and apparently continued to operate at a loss through the time of trial in 1993.

During the years at issue in this case, 1985 to 1987, South Sea had no regularly salaried employees. Ranciato's mother worked about 35 to 40 hours weekly at the store, and he, his wife and two children also took turns operating the business.[2] Ranciato primarily worked at the store evenings and weekends, spending most weekdays working either as an electrician or real estate agent. In 1985, for example, he had two substantial jobs as an electrician, earning about $44,000. He also was an associate of a real estate agency in 1985, and opened his own real estate business late that year or early in 1986.

Ranciato handled South Sea's bookkeeping during the three years at issue. His procedures were far from meticulous and the store's records were "very disorganized." (Tax Court Opinion at 5.) His method of operating the business remained unchanged throughout the lengthy period of losses; he made no effort, for example, to determine whether he sold more live animals or more pet supplies and whether a change might improve the business's performance. Aside from an advertisement in the yellow pages each year, he spent $91 on advertising in 1985 and nothing in 1986 and 1987.

William M. Bloss, New Haven, CT, for petitioners-appellants.

Richard Farber, Washington, DC (Loretta C. Argret, Asst. Atty. Gen., and Gary R. Allen, and Jordan L. Glickstein, on the brief), for respondent-appellee.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and COFFIN *, Senior Circuit Judges.

COFFIN, Senior Circuit Judge:

■ Anthony and Lucille Ranciato appeal a decision of the United States Tax Court finding that their family pet store was not an activity "engaged in for profit" and that, consequently, they could not deduct the store's losses from unrelated income. *See* 26 U.S.C. § 183. Disallowing the deductions resulted in an assessment against the Ranciatos of nearly $86,000 in additional taxes, penalties and interest for the years 1985, 1986 and 1987.[1] Because it appears that the Tax Court gave undue weight to the sloppy

---

* Of the First Circuit, sitting by designation.

1. Lucille Ranciato is a party solely because she filed joint tax returns with her husband during the years in issue. For the sake of convenience, the remainder of this opinion shall discuss the case as if it involved only Anthony Ranciato.

2. With the exception of one son, Dustin, who was paid $1,470 in 1985, the family members all worked without pay. Ranciato's mother worked at the store fulltime since shortly after it opened.

The Ranciatos' gross income from all sources, including Lucille's employment in 1985 as a nurse, was $66,942 in 1985, $33,488 in 1986, and $44,221 in 1987. They claimed losses from South Sea during those years in the amounts of $27,377, $27,795 and $20,976. Ranciato testified that he paid the expenses stemming from South Sea with his employment income, his savings and funds drawn from an equity mortgage on his home.

In a notice of deficiency dated November 8, 1991, the Commissioner of Internal Revenue determined that the taxpayer was not entitled to his claimed losses resulting from the operation of South Sea because he had not established that these losses were incurred in connection with an activity entered into for profit. Following a one-day trial, the Tax Court upheld the Commissioner's determination that Ranciato lacked a profit motive, primarily because the pet store was not operated in a businesslike manner and he made no effort to improve its performance. This appeal followed.

## II. *Legal Principles*

Section 183 of the Internal Revenue Code provides that taxpayers may not fully deduct losses from an activity unless it is "engaged in for profit." 26 U.S.C. §§ 183(a), (b). The provision was enacted as part of the Tax Reform Act of 1969 in an effort to increase the Code's previously limited effectiveness in preventing taxpayers from offsetting other income with losses from non-profit activities. *See Dreicer v. Commissioner of Internal Revenue,* 665 F.2d 1292, 1297–98 (D.C.Cir.1981); S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.C.C.A.N. 1645, 2027, 2133, 2376–77; H.R.Rep. No. 413, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.C.C.A.N. 1645, 1717. The legislative history discloses a particular concern about wealthy individuals attempting to generate paper losses for the purpose of sheltering unrelated income. *See* S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.C.C.A.N. 2027, 2376–77; *Faulconer v. Commissioner of Internal Revenue,* 748 F.2d

890, 893 (4th Cir.1984); *Nickerson v. Commissioner of Internal Revenue,* 700 F.2d 402, 405 (7th Cir.1983).[3]

Under the regulations enacted pursuant to the statute, "[a]n activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity." *Campbell v. Commissioner of Internal Revenue,* 868 F.2d 833, 836 (6th Cir. 1989); Treas.Reg. § 1.183–2(a). The regulations direct that a taxpayer's intent be divined "by reference to objective standards, taking into account all of the facts and circumstances of each case." Treas.Reg. § 1.183–2(a); *Estate of Baron v. Commissioner of Internal Revenue,* 798 F.2d 65, 74 (2d Cir.1986). The regulations list nine factors that normally should be considered: (1) whether the taxpayer carried on the activity in a businesslike manner; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in conducting the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss in the activity; (7) the amount of occasional profits earned, if any; (8) the taxpayer's financial status; and (9) elements of personal pleasure or recreation in the activity. *See id.* at § 1.183–2(b)(1)–(9). These factors are not exclusive, and no one factor or number of factors is determinative. *Id.; Hendricks v. Commissioner of the Internal Revenue Service,* 32 F.3d 94, 98 (4th Cir.1994); *Faulconer,* 748 F.2d at 894. The burden of demonstrating that an activity was engaged in with the requisite profit motive rests with the taxpayer. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Burger v. Commissioner of Internal Revenue,* 809 F.2d 355, 358 (7th Cir.1987); *Faulconer,* 748 F.2d at 893.

Although the regulations reflect Congress's desire for an objective standard to evaluate a taxpayer's profit motive, *see, e.g.,*

---

**3.** In this respect, the Senate Report focused primarily on farming operations, where significant tax abuse had been identified, but it also noted an overall concern about the unfair advantages taken by taxpayers with substantial incomes. *See* S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.C.C.A.N. at 2027.

*Nickerson,* 700 F.2d at 405, their emphasis on a case-by-case consideration of circumstances and the explicit rejection of a mathematical weighing of factors indicate that common sense and an appreciation for the overall picture also must play a role in answering the elusive question of a particular taxpayer's intent. Thus, the assessment of the objective factors must be informed by "the insight gained from a lifetime of experience as well as an understanding of the statutory scheme." *Id.* at 407.

We review the decision of the Tax Court with this approach in mind, recognizing that its findings and factual inferences may be disturbed only if "clearly erroneous." *Jacobson v. Commissioner of Internal Revenue,* 915 F.2d 832, 837 (2d Cir.1990).

### III. *Discussion*

The Tax Court's analysis specifically referred to six of the nine factors listed in the regulations. First, it found that the pet store was not operated in a businesslike manner, in light of, *inter alia,* Ranciato's "haphazard and incomplete" records, the failure to advertise to any significant extent, and his lack of knowledge of such basic information as his gross profit percentage. Second, Ranciato presented no evidence that he ever had consulted with experts concerning the store's poor performance. Third, in the court's view, the Ranciatos devoted "only a small amount of time" to the store. Fourth, there was no expectation that the store's assets would increase in value, offsetting the losses. Indeed, the court noted that the value of the inventory decreased over time as animals became diseased or died. Fifth, the court noted that, despite a long history of losses, Ranciato did not adopt a different method of operation, which perhaps would have limited the number of sick animals. Sixth, the court stated that Ranciato did not engage in the operation of South Sea for pleasure, although it added that "he may have had personal purposes for so doing." Based on these factors, the court concluded that Ranciato lacked a profit motive.

We agree with the Tax Court that the record contains some evidence that Ranciato did not have a profit objective during the time period at issue. The fact that he suffered substantial losses year after year and made no attempt to seek an explanation or change the tide could support an inference that he was, at best, indifferent to whether the losing trend could be reversed. Particularly when the extended period of losses is supplemented by the evidence of Ranciato's casual recordkeeping and the fact that he had other reasonable income on which to live, it might be plausible to conclude that the pet store was operated during the years in question as a valued family project without regard to profitability. *See Hendricks,* 32 F.3d at 99 (upholding Tax Court's finding of lack of profit motive on the part of a surgeon who spent most weekends and some weekdays working on his farm, which showed a profit only once in twenty years, though taxpayer took several steps to reduce costs and improve profitability) ("[A] record of continued losses over an extended period of time is plainly relevant in discerning a taxpayer's true motivation.").[4]

We are unable to affirm the Tax Court's decision, however, because it failed to take into account *all* of the relevant circumstances and, in so doing, relied disproportionately on Ranciato's negligent business methods. First, we think it important to recognize that Ranciato is not the type of taxpayer about whom Congress was concerned and at whom it directed the revised for-profit requirement. *See supra* at 4–5. Ranciato is a solid middle-class wage earner, not an individual of wealth whose unprofitable extracurricular activities would suggest an effort to shelter unrelated income through deliberate losses. Although the Tax Court reported in its findings of fact that Ranciato would take out loans or use personal funds to pay suppliers, it made no reference in its analysis to the fact that he suffered actual rather than paper losses. Indeed, the Tax Court gave no explicit weight to Ranciato's moderate financial status, which, together with the way in which he

---

**4.** Of course, the fact that a taxpayer derives personal satisfaction from engaging in an activity does not, on its own, mean that the activity is not engaged in for profit. Treas.Reg. § 1.183–2(b)(9).

continued to invest in the business, weighs in favor of a profit motive.

Second, the Court neglected the profitable chapter of the pet store's history.[5] Ranciato testified, without contradiction, that the pet store made money in its early years—a period that may have extended from its opening in 1962 to the confirmed beginning of the period of unprofitability in 1980. In addition, Ranciato moved the business several times, changing from a free-standing store where utilities were high and traffic was lower to a small store in a shopping center.

Certainly, the changes in location, the last of which occurred in the early 1980s, suggest a desire to improve and operate profitably. The fact that Ranciato did not also change his casual day-to-day business methods need not undercut such an inference since those methods apparently were adequate to achieve financial success during the store's first eighteen or so years. The failure to take additional steps simply may reflect extreme, and perhaps unwise, patience and confidence that conditions eventually would return to "normal." Alternatively, Ranciato's seeming complacency may have been the inevitable consequence of time constraints imposed by his other jobs, rather than demonstrating relinquishment of profitability as a goal. In any event, regardless of the ultimate inferences drawn, the history of successful operation and the effort to find better locations are factors that weigh in favor of a profit objective and must be considered in evaluating Ranciato's motivation.[6]

We conclude that the Tax Court's failure to include in its analysis these significant factors, which favor the taxpayer's position, undermines its conclusion. We believe that a remand, rather than reversal, is the appropriate course to take because consideration of the omitted factors does not, in our view, lead inexorably to a conclusion that Ranciato operated South Sea with a profit motive. The inferences drawn by the Tax Court from the factors it did consider are not necessarily negated by the neglected information, although the calculus is considerably changed and might well yield a different result. We therefore direct the court to make a new determination giving full attention to all relevant circumstances.

■ In so doing, the Tax Court should weigh the factors with due appreciation for the Congressional objective in enacting § 183. The basic thrust of its original opinion was that Ranciato ran this business poorly, failing to consult experts or change methods to counteract losses. We are concerned with the open-endedness of such a rationale, specifically, the implication that the more incompetent the businessman, the less entitled he is to tax deductions. Section 183 is not designed to penalize those who run businesses ineptly or unwisely, but only to deny tax benefits to those who deliberately and willingly engage in financially unprofitable activities.

■ We recognize that, because the taxpayer bears the burden of proof, the Commissioner and Tax Court could find a profit motive lacking even when its absence might seem somewhat irrational. But we think that considerable caution is demanded in the rather idiosyncratic situation presented here. Counsel for the Commissioner acknowledged at oral argument that it is unusual for questions to arise concerning the profit motive of a retail business owner. Indeed, counsel could point to no case in which such a business, operated by a middle-income taxpayer, had been found to lack a profit objective. In these circumstances, rigorous and sensitive consideration of all relevant factors is espe-

---

5. The court may have recognized indirectly that the store had profitable years by noting that "[t]his is not a case where the series of losses is at the beginning or start-up stage of the activity, where we would be more sympathetic to petitioners." Opinion at 11. It did not, however, make any direct reference to the successful years in its analysis.

6. We note, in addition, that the Tax Court appeared to hold against the taxpayer the fact that neither he nor his wife spent "significant" amounts of time at the store. We think it relevant in determining Ranciato's intent, however, that his mother devoted substantial time to South Sea. *See* Treas.Reg. § 1.183–2(b)(3) ("The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit.")

cially required. Fairness and logic also suggest that the burden of proof be lighter in this context than when a taxpayer is engaged in activities, such as farming and horsebreeding, that often have been pursued for tax reasons. *See supra* at 5 n. 4.

Certainly, when the activity at issue is a typically profit-oriented enterprise such as a retail store *and* the Commissioner fails to find a particular non-profit motive, the taxpayer must have an easier task of proving a profit motive. *Cf. Nickerson,* 700 F.2d at 407 ("While the Commissioner need not prove that petitioners were motivated by goals other than making a profit, we think that more weight should be given to the absence of any alternative explanation for petitioners' actions.... Common sense indicates to us that rational people do not perform hard manual labor for no reason, and if the possibility that petitioners performed these labors for pleasure is eliminated the only remaining motivation is profit."). *See also* Treas.Reg. § 1.183–2(b)(9); *Cannon v. Commissioner of Internal Revenue,* 949 F.2d 345, 351 (10th Cir.1991) ("[T]he absence of any suggestion of an alternative motive in the record is a powerful factor in support of the taxpayer's position."). In other words, the benefit of any doubts in these circumstances should go to the taxpayer.[7]

Accordingly, we vacate the decision of the Tax Court and remand for further proceedings consistent with this opinion.

---

**7.** Ranciato also argues that the Tax Court erred in drawing a negative inference from the fact that he did not call his mother as a witness on his behalf. We agree that such an inference is without any basis in the record. Ranciato testified that on the day of the trial his mother was operating the store, and the court did not identify any particular piece of information that she was uniquely situated to provide. *Cf. Frierdich v. Commissioner of Internal Revenue,* 925 F.2d 180,

185 (7th Cir.1991) (missing witness inference drawn where issue was whether a $100,000 transfer from the potential witness to the taxpayer was a loan or prepayment for legal fees, and where IRS made repeated efforts to contact and subpoena witness) ("Given the importance of Ruth Reeves in substantiating Frierdich's case, the Tax Court was fully justified in assuming that her testimony would not corroborate Frierdich's various contentions.").