T.C. Memo. 1996-285

UNITED STATES TAX COURT

JAMES C. VALLETTE AND ARLEEN R. VALLETTE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3380-94.                    Filed June 20, 1996.

<u>James Alvin Watson</u>, for petitioners.

<u>Emile L. Hebert III</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  James C. Vallette and Arleen R. Vallette
petitioned the Court to redetermine respondent's determination of
deficiencies in their 1989 and 1990 Federal income taxes.
Respondent determined an $18,990 deficiency for 1989 and a
$14,840 deficiency for 1990.  Following concessions by the
parties, we must decide whether petitioners operated a cattle
breeding activity with the requisite profit objective within the
meaning of section 183.  We hold they did not.  Unless otherwise

stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar. James C. Vallette and Arleen R. Vallette are referred to as Mr. Vallette and Mrs. Vallette, respectively.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. These facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioners resided in Sulphur, Louisiana, when they petitioned the Court. They filed 1989 and 1990 Forms 1040, U.S. Individual Income Tax Return, using the filing status of "Married filing joint return". Losses from a self-owned cattle breeding activity were reported on petitioners' 1989 and 1990 Schedules F, Farm Income and Expenses.

In 1979, petitioners began their breeding activity under the name Vallette Farm, at a site located approximately 1 to 2 miles from their home.[1] They bred heifers with bulls to produce calves (a "cow-calf operation"). They sold the bull calves at market, and they either sold the heifer calves at market or retained the heifer calves for future breeding. Before 1979, petitioners had never owned or operated a cattle breeding business. Petitioners

---

[1] During the subject years, this site included 800 acres of land. Petitioners owned 110 acres of this land, and they leased the remaining acreage on a yearly basis. Petitioners never improved any of the leased land.

started breeding cattle in 1979, after they began receiving substantial royalties from an oil well that was drilled on their land.  On their 1979 through 1994 Forms 1040, petitioners reported the following amounts from cattle breeding and oil:

| | Cattle breeding | | | Net royalties |
| Year | Income | Expenses[1] | Net Loss | from oil |
|---|---|---|---|---|
| 1979 | $2,690 | $15,299 | $12,609 | $157,789 |
| 1980 | 3,862 | 68,964 | 65,102 | 172,379 |
| 1981 | 21,606 | 85,028 | 63,422 | 198,030 |
| 1982 | 9,562 | 70,297 | 60,735 | 226,610 |
| 1983 | 4,570 | 89,696 | 85,126 | 167,465 |
| 1984 | 12,020 | 108,025 | 96,005 | 190,019 |
| 1985 | 7,522 | 93,003 | 85,481 | 159,237 |
| 1986 | 13,984 | 80,162 | 66,178 | 100,317 |
| 1987 | 21,891 | 95,901 | 74,010 | 112,640 |
| 1988 | 5,135 | 93,455 | 88,320 | 142,692 |
| 1989 | 4,234 | 64,955 | 60,721 | 69,933 |
| 1990 | – 0 – | 67,998 | 67,998 | 72,048 |
| 1991 | 49,320 | 77,835 | 28,515 | 123,622 |
| 1992 | 13,550 | 90,689 | 77,139 | 114,921 |
| 1993 | 46,933 | 87,673 | 40,740 | 97,876 |
| 1994 | 36,053 | 67,698 | 31,645 | 49,011 |
| Total | 252,932 | 1,256,678 | 1,003,746 | 2,154,589 |

[1]Petitioners' largest single expense was depreciation.

During the subject years, petitioners' involvement in their breeding activity included worming and feeding the cattle, delivering calves, planting grass for the cattle, and maintaining fences.  Besides petitioners, the primary individuals who worked in the breeding activity were petitioners' two sons, Matthew and Stephen, and their son-in-law, Kim Little.  None of these helpers received any compensation from petitioners for their help.  All of these helpers worked full-time for other employers.  Stephen and Kim also owned and operated other farms.

Petitioners have never kept a set of books or records for their breeding activity. They have never maintained any records on the lineage, birth, or disposition of their cattle. Mr. Vallette enjoys working with cattle. He grew up around cattle, and the cattle industry is second nature to him.

OPINION

Respondent disallowed petitioners' losses from their breeding activity because she determined that the activity was "not engaged in for profit" under section 183. Section 183 generally limits the deductions for an activity not entered into for profit. Sec. 183(b). An activity is not engaged in for profit if deductions are not allowable for the taxable year under section 162 or section 212(1) or (2). Sec. 183(c). Section 162 allows individuals to deduct ordinary and necessary expenses connected with the conduct of a trade or business. Section 212(1) and (2) allows individuals to deduct expenses for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), affg. T.C. Memo. 1993-634.

An individual engages in an activity for profit for purposes of section 183 if he or she entered into, or continued, the activity "with the actual and honest objective of making a profit". Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983).

An individual's expectation of profit need not be reasonable, but he or she must have a good faith objective of making a profit. Allen v. Commissioner, 72 T.C. 28, 33 (1979); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer conducts an activity with the requisite profit objective rests on the facts of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). More weight is given to the objective facts than to an individual's subjective expression of his or her intent. Sec. 1.183-2(a), Income Tax Regs. Because respondent determined that petitioners' breeding activity was not engaged in for profit, petitioners must prove that respondent's determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Westbrook v. Commissioner, supra at 876. Petitioners rely almost exclusively on their limited testimony, which focuses mainly on taxable years preceding the years in issue, as well as the scant testimony of Stephen and Kim, which also is aimed primarily at prior years. The only exhibits in evidence are: (1) Petitioners' 1979 through 1994 Forms 1040 and (2) the subject notice of deficiency. The parties stipulated to minimal facts, and all of these stipulated facts are best described as favorable to respondent.

We are aided by the following nonexclusive factors in deciding whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her adviser; (3) the time and

effort expended by the taxpayer in carrying on the activity;
(4) the expectation that assets used in the activity may
appreciate in value; (5) the success of the taxpayer in carrying
on similar or dissimilar activities; (6) the taxpayer's history
of income or losses in the activity; (7) the amount of occasional
profits, if any, that are earned; (8) the financial status of the
taxpayer; and (9) the elements of personal pleasure or
recreation.  Westbrook v. Commissioner, supra at 876; sec.
1.183-2(b), Income Tax Regs.  None of these nine factors is
dispositive, in and of itself, and a decision does not rest on
the number of factors satisfied.  Golanty v. Commissioner, supra
at 426; sec. 1.183-2(b), Income Tax Regs.  We assess each factor
with the aid of our common sense, and we bear in mind the insight
that we have gained from a lifetime of experience, as well as our
understanding of how the relevant statutory scheme was meant to
apply to the facts at hand.  Ranciato v. Commissioner, 52 F.3d
23, 25-26 (2d Cir. 1995), remanding T.C. Memo. 1993-536.

Bearing these basic principles in mind, we turn to the nine
factors, analyzing and discussing them one at a time.

1.  Manner in which the activity is conducted

We consider the manner in which petitioners conducted their
breeding activity.  See sec. 1.183-2(b)(1), Income Tax Regs.
Objective facts showing that a taxpayer carries on an activity in
a businesslike manner are indicative of a profit intent.  The
same is true with respect to the maintenance of complete and

accurate records.  Id.  The fact that an individual adopts a different method of operating or abandons unprofitable methods with respect to operating his or her activity may suggest a desire to earn a profit.  Id.

Petitioners have failed to persuade us that they conducted their breeding activity in a businesslike manner.  They rely merely on their subjective expressions of intent, as well as the limited testimony of family members.  Petitioners did not produce any of their activity's records at trial.  They did not establish that they used "cost accounting techniques that, 'at a minimum, provide the entrepreneur with the information he [or she] requires to make informed business decisions."  Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987) (quoting Burger v. Commissioner, T.C. Memo. 1985-523), affg. T.C. Memo. 1985-523. They did not demonstrate that they monitored expenses or assessed their activity's profitability.  They did not establish that they maintained a budget for their activity, or that they advertized any of their cattle for sale.  Although Mr. Vallette testified without contradiction that he tried before the subject years to remedy his problem with "bad cattle" by switching his breed of cattle to a breed that his "common knowledge" told him was the better breed, we do not believe that this self-supporting statement standing alone is enough to establish a profit intent. The fact that petitioners' activity experienced losses year after year, and that they took no action to explain the losses or to

reverse the tide, adds further support to our belief that petitioners were, at best, indifferent as to whether the losing trend could be reversed.  See Ranciato v. Commissioner, supra at 26.

This factor favors respondent's determination.

## 2.  Expertise of taxpayers

We consider the expertise of petitioners with respect to their activity.  See sec. 1.183-2(b)(2), Income Tax Regs.  A taxpayer's expertise, research, and study of an activity, as well as his or her consultation with experts, is indicative of a profit intent with respect thereto.  Id.  In preparing for an activity, a taxpayer need not make a formal market study, but he or she should undertake a basic investigation of the factors that would affect the activity's profitability.  Underwood v. Commissioner, T.C. Memo. 1989-625; Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).

Mr. Vallette's prior experiences with cattle made him knowledgeable on the subject.  The mere fact that he was skilled in the cattle industry, however, does not mean that petitioners began or continued their breeding activity for profit.  Our careful review of this factor suggests that the weight of Mr. Vallette's expertise and hands-on experience was offset by petitioners' lack of knowledge on the economics of the cattle breeding industry.  Among other things, the record does not suggest that petitioners:  (1) Sought any professional advice on

the economic aspects of breeding cattle; i.e., on how to make the activity profitable, see Burger v. Commissioner, 809 F.2d at 359; (2) read any literature on the business side of breeding cattle; (3) performed any meaningful economic study on the profit potential of breeding cattle; (4) prepared any market analysis on breeding cattle; (5) established a meaningful breeding plan; or (6) studied, or consulted with professionals on, the magnitude of expenses which they were likely to encounter.

This factor favors neither party. We consider it neutral.

3. Time and effort spent in conducting the activity

We consider the time and effort spent by petitioners in conducting their activity. See sec. 1.183-2(b)(3), Income Tax Regs. The fact that a taxpayer devotes much of his or her personal time to an activity may indicate a profit intent. The failure of a taxpayer to devote substantial time to an activity weighs against a profit objective, unless, for example, the taxpayer employs capable personnel to conduct the activity in his or her stead. Employing capable personnel shows a profit intent. Id.

Petitioners have not persuaded us that they spent much time in their breeding activity during the subject years. Although the record contains some testimony establishing that petitioners and their relatives devoted time to the activity during the subject years, we are not persuaded that this aggregate time

weighs toward a profit objective. This factor favors neither party. We consider it neutral.

####    4.  Expectation that the assets will appreciate in value

We consider the expectation that assets used in petitioners' activity may appreciate in value. See sec. 1.183-2(b)(4), Income Tax Regs. The term "profit" includes the appreciation in the value of assets used in an activity. Id.

Petitioners have not established that they expected their activity's assets to increase in value. Indeed, the value of petitioners' cattle decreased after the years in issue.

This factor supports respondent's determination.

####    5.  Taxpayer's success on similar or dissimilar activities

We consider petitioners' success on similar or dissimilar activities. See sec. 1.183-2(b)(5), Income Tax Regs. Although an activity is unprofitable, the fact that a taxpayer previously converted similar activities from unprofitable to profitable enterprises may show a profit intent with respect thereto. Id.

Petitioners have not established that they experienced any success in a similar or dissimilar activity. This factor supports respondent's determination.

####    6.  An activity's history of income and/or losses

We consider petitioners' history of income and/or losses with respect to their activity. See sec. 1.183-2(b)(6), Income Tax Regs. Losses continuing beyond the period customarily required to make an activity profitable, if not explainable,

indicate that the activity is not engaged in for profit. Although a series of losses at the beginning of an activity does not necessarily mean that the activity was not entered into for profit, such a string of losses weighs against a profit intent absent unforeseen or fortuitous circumstances beyond the taxpayer's control (e.g., fire, disease, theft). A string of substantial losses over many years and the unlikelihood of turning a profit are important factors in ascertaining intent. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); see also Cannon v. Commissioner, T.C. Memo. 1990-148, affd. 949 F.2d 345 (10th Cir. 1991).

The start-up period for a cow-calf operation is 5 to 7 years. See Hrdlicka v. Commissioner, T.C. Memo. 1985-403. Petitioners reported a loss from their cow-calf operation for 16 years in a row from 1979 to 1994, totaling $1,003,746. Petitioners have not established that any of these breeding losses was due to unforeseen or fortuitus circumstances beyond their control or that this stream of losses was likely to change. Petitioners have also offered no evidence, other than their subjective testimony, to support their assertion that these losses were from a business.

Even if we were to assume, arguendo, that petitioners had a profit objective before the subject years, we would still not be persuaded that they retained this objective during the subject years. In order to fall outside the purview of section 183, one

need not merely have had a profit objective before the years in dispute.  The taxpayer must possess the required objective during each disputed year.  Sec. 1.183-2(b), Income Tax Regs.; see also Dennis v. Commissioner, T.C. Memo. 1984-4.  Although a profit intent in a prior year may be evidence of such an intent in a later year, a prior intent will not serve as a "blank check" for a taxpayer to continually operate a loss activity outside the scope of section 183.  See Daugherty v. Commissioner, T.C. Memo. 1983-188.

This factor favors respondent's determination.

### 7.  Amount of occasional profits

We consider the occasional amount of profits, if any, from the subject activity.  Sec. 1.183-2(b)(7), Income Tax Regs.  For the reasons stated immediately above, we hold that this factor favors respondent's determination.

### 8.  Financial status of taxpayer

We consider petitioners' financial status.  See sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than an activity, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit.  This is especially true where there are personal or recreational elements involved. Id.; see Jasionowski v. Commissioner, 66 T.C. 312, 322 (1976).

From 1979 to 1994, petitioners reported substantial taxable income independent of their breeding losses.  Petitioners'

ability to earn this income let them finance their breeding activity, and it allowed them to use the activity's losses to reduce significantly their income tax liability for each year.

This factor favors respondent's determination.

9. Elements of personal pleasure

We consider the personal pleasure derived by petitioners from conducting their activity. See sec. 1.183-2(b)(9), Income Tax Regs. Although the mere fact that a taxpayer derives personal pleasure from a particular activity does not negate a profit intent with respect thereto, the presence of personal motives may indicate that the activity is not engaged in for profit. This is especially true where there are recreational or other personal elements involved. Id.

Our review of the record, in conjunction with our observation of petitioners during their testimony, leads us to believe that they had strong personal reasons for breeding cattle. Our observation of petitioners testifying at trial leads to the inescapable conclusion that they each gained significant personal pleasure from their involvement in the cattle industry, and that their enjoyment and satisfaction would have been the same regardless of the activity's bottom line. See Ballich v. Commissioner, T.C. Memo. 1978-497. Among other things, we believe that Mr. Vallette, the backbone of petitioners' breeding activity, engaged in that activity due to his affection for cattle. He has been involved with cattle since a very young age,

and his co-workers in the activity have always been his wife and their immediate family, none of whom were paid. As this Court observed, with respect to this factor:

> Unquestionably, an enterprise is no less a 'business' because the entrepreneur gets satisfaction from his work; however, where the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity. [Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).]

This factor favors respondent's determination.

10. Conclusion

Based on our discussion above, we conclude that petitioners operated their activity without an "actual and honest" objective of making a profit. The activity provided petitioners with satisfaction, and any income derived therefrom served only as an added bonus to them.

We have considered all arguments made by petitioners for a contrary holding and, to the extent not discussed above, have found them to be without merit. To reflect concessions,

Decision will be entered

under Rule 155.