**In re Donna L. FLETCHER, Debtor.**

**No. 99–11486(RLK).**

United States Bankruptcy Court,
D. Vermont.

April 11, 2000.

David M. Hyman, David M. Hyman Attorney at Law, PLC, Burlington, VT, for Debtor.

Kevin Purcell, Office of the United States Trustee, Albany, NY, for Movant, Schwartz, United States Trustee.

*RULING ON UNITED STATES TRUSTEE'S MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE FOR SUBSTANTIAL ABUSE OF CHAPTER 7 PROVISIONS*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.[1]

## I.

### *ISSUE*

The matter before the court is the contested motion of Carolyn S. Schwartz, United States Trustee for Region 2 ("the UST") for dismissal of the Chapter 7 bankruptcy case of Donna L. Fletcher ("the debtor"), pursuant to Bankruptcy Code § 707(b), for "substantial abuse" of Chapter 7 provisions. The pivotal issue is whether the debtor's activity as a professional off-road bicycle racer qualifies as a business or as a hobby. The UST argues that the debtor's professional bicycle racing expenses are of a recreational nature; that the debtor, if these expenses are excluded, has the ability to repay a signifi-

cant portion of her pre-petition indebtedness out of her post-petition earnings; and that, accordingly, her Chapter 7 petition is a "substantial abuse" of that Chapter, warranting dismissal. The debtor contends that her professional racing expenses are reasonable and necessary business expenses that should be deducted in calculating her post-petition disposable income under a § 707(b) analysis.

The court held a hearing on the UST's motion on March 14, 2000, at which the debtor was the sole witness. She testified regarding her income, expenses, and indebtedness, particularly with regard to her professional bicycle racing activities. The court admitted into evidence as exhibits the debtor's Chapter 7 petition, her original and amended schedules of assets, liabilities, income and expenses, and her federal income tax returns for 1998 and 1999.

## II.

### *BACKGROUND*

The debtor is 28 years old and for the last four years has been employed as a customer service manager by Garmont U.S.A., a distributor of cross-country ski equipment and hiking boots. In the past two years as a professional bicycle racer she has participated in approximately 30 races annually. Although she has won some of the races in which she was entered, the debtor has incurred annual expenses that far exceed her annual income from racing. The debtor trains extensively on a daily basis; she has sponsors who have provided her with the bicycles, clothing and, occasionally, entry fees required for participation in these races. Otherwise she pays her own expenses which include the costs of bicycle repairs, transportation, and lodging and most entry fees. During racing season, she works a lighter schedule at Garmont and also utilizes her vacation time. The National Off–Road Bicycle Association ranks the debtor in two events— the dual slalom and downhill races—for

---

1. Sitting by assignment of the Judicial Council of the Second Circuit.

which she wears a full-face helmet, chest protector, knee protection, elbow pads, goggles, and heavy-duty clothing.

The debtor has filed a Schedule C, "Profit or Loss from Business", with her federal tax returns for 1998 and 1999. These returns disclose that in 1998, the debtor's racing produced revenues of $990 and expenses of $11,140, resulting in a net loss of $10,150. In 1999, revenues were $2,175 and expenses were $16,756, resulting in a net loss of $14,581. The cash prizes for a race can run as high as $8,000 or $9,000 and the debtor hopes to show a profit from racing in the current year.

The debtor's Amended Bankruptcy Schedule I (Ex. D) discloses that she has a monthly income of $2,166.92. This amount includes her 2,600.00 salary from Garmont, plus $181.00 of prize money from racing, and excludes payroll deductions of $576.16 for payroll taxes and $37.92 for insurance. The debtor's monthly expenses of $2,068.10 include $450.00 of professional bicycle racing expense. The debtor's Bankruptcy Schedules, as amended (Exs.A, B), show $20,489.52 of indebtedness, all unsecured, and nonexempt assets of $135.00. The debtor has incurred no indebtedness in connection with her racing activities, and she pays her racing expenses from the income she earns at Garmont. She incurred all of her scheduled indebtedness prior to the start of her racing activities.

### III.

#### SECTION 707(b)

Section 707(b) provides, in pertinent part, that, "After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter [7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presump-

tion in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). It is undisputed that the debtor has incurred only consumer debt.

■ The Second Circuit has adopted the "totality of the circumstances" approach for determining whether to dismiss a case under § 707(b) for substantial abuse. *In re Kornfield*, 164 F.3d 778, 783 (2d Cir.1999). "Noting that 'a division among courts exists over the degree of emphasis to be placed on the ability of the debtor to repay debts out of future income,' the Second Circuit declined to 'spell out in greater detail the precise content of the proper totality of the circumstances test in this circuit,' but agreed with the analysis of the bankruptcy court in *Kornfield* as being 'well within the mainstream of analysis used by other circuits.' *Id.* at 783–84. This court, therefore, will apply that approach, a two-part test, looking first to whether the [debtor has] the ability to pay a substantial dollar amount or percentage of [her] unsecured debts, and then to the totality of the circumstances to determine whether there were any mitigating or aggravating factors. *In re Carlton*, 211 B.R. 468, 477–78 (Bankr.W.D.N.Y.1997)." *In re Heffernan*, 242 B.R. 812, 815–16 (Bankr.D.Conn.1999).

■ In considering the debtor's ability to pay all or a portion of her indebtedness, the court looks to the "disposable income" that would be available to pay creditors under a hypothetical Chapter 13 plan. *Heffernan*, 242 B.R. at 816; *see also In re Koch*, 109 F.3d 1285, 1288 (8th Cir.1997) ("[A]bility to pay for § 707(b) purposes is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding."). Bankruptcy Code § 1325(b)(2) defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended (A) for the maintenance or support of the debtor ...; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such

business." 11 U.S.C. § 1325(b)(2). In order to determine the debtor's disposable income, the court must first determine whether the debtor's racing activities constitute a business or a hobby. If the court finds the debtor's racing to be a business, her racing expenses would be deducted, in accordance with § 1325(b)(2)(B), in calculating her disposable income.

The debtor's monthly income of $2,166.92 and expenses of $2,068.10 leaves her with a disposable income of $98.82 per month. The UST contends that the $450 per month of racing expenses are recreational and should be excluded from the determination of disposable income. Since the debtor would lack the funds to race under the UST's scenario, her income would consequently be reduced by the $181.00 of prize money as well. The net effect of treating the racing as a hobby would be a $269.00 per month increase in disposable income to $367.82. Under a hypothetical thirty-six month Chapter 13 plan, a monthly payment of $367.82, after allowing for a 10% fee to the Chapter 13 trustee, would provide creditors with $11,-917.37, or 58% of their claims.

## IV.

### DISCUSSION

■■■ The Bankruptcy Code does not define the phrases, contained in § 1325(b)(2)(B), "engaged in business" or "expenditures necessary for the continuation, preservation, and operation of such business." There is, however, a considerable body of case law, of which the court will avail itself, concerning the distinction between a business and a hobby that has evolved under the analogous provisions of the Internal Revenue Code [2] ("the I.R.C.") to determine whether the expenses associated with various activities are deductible as "the ordinary and necessary expenses paid or incurred ... in carrying on any trade or business." 26 U.S.C. § 162. In considering the tax cases, the statutory presumption in favor of the debtor in § 707(b) becomes of great significance. The court construes this presumption to place the burden of proving that the debtor's racing activities are recreational on the UST. *See, e.g. In re Lee,* 162 B.R. 31, 33 (Bankr.N.D.Ga.1993) ("Because a presumption exists in favor of according relief to a debtor, the burden of proof is upon the U.S. Trustee to show a debtor's case should be dismissed."); *In re Farrell,* 150 B.R. 116, 118 (Bankr.D.N.J.1992) ("Most importantly, however, the United States trustee bears the burden of overcoming the strong presumption in favor of granting the discharge requested by the debtor."). Under the I.R.C., in contrast, the burden of proving that the activities at issue are a business rests with the taxpayer. *See Ranciato v. Commissioner of Internal Revenue,* 52 F.3d 23, 26 (2d Cir. 1995) ("The burden of demonstrating that an activity was engaged in with the requisite profit motive rests with the taxpayer....the taxpayer bears the burden of proof....").

The United States Supreme Court, in a seminal case, held that a taxpayer's gambling activities were a business and that his losses were therefore deductible. The Court ruled:

> deduction attributable to such activity shall be allowed under this chapter except as provided in this section.
>
> ...
>
> (d) Presumption.—If the gross income derived from an activity for 3 or more of the taxable years in the period of 5 consecutive taxable years ... exceeds the deductions attributable to such activity ... then ... such activity shall be presumed ... to be an activity engaged in for profit.

2. 26 U.S.C. § 162 provides, in relevant part:
§ 162. Trade or business expenses
(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business....
26 U.S.C. § 183 provides in relevant part:
§ 183. Activities not engaged in for profit.
(a) General rule.—In the case of an activity engaged in by an individual ... if such activity is not engaged in for profit, no

We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.... [W]e conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business.... We therefore adhere to the general position ... that resolution of this issue requires an examination of the facts in each case. *Commissioner of Internal Revenue v. Groetzinger,* 480 U.S. 23, 35–36, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987) (citations and quotation marks omitted).

The Internal Revenue Service subsequently adopted a regulation, Treas.Reg. § 1.183–2, to clarify the type of criteria to be considered in determining whether an activity was business or recreational in nature. *See Ranciato* 52 F.3d at 25–26 ("Under the regulations ... an activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity. The regulations direct that a taxpayer's intent be divined by reference to objective standards, taking into account all of the facts and circumstances of each case. The regulations list nine factors that normally should be considered: (1) whether the taxpayer carried on the activity in a business-like manner; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in conducting the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss in the activity; (7) the amount of occasional profits earned, if any; (8) the taxpayer's financial status; and (9) elements of personal pleasure or recreation in the activity. These factors are not exclusive, and no one factor or number of factors is determinative. Although the regulations reflect Congress's desire for an objective standard to evaluate a taxpayer's profit motive, their emphasis on a case-by-case consideration of circumstances and the explicit rejection of a mathematical weighing of factors indicate that common sense and an appreciation for the overall picture also must play a role in answering the elusive question of a particular taxpayer's intent.").

■ In *Ranciato,* the Second Circuit emphasized the need to weigh all of the relevant facts and circumstances and whether the party bearing the burden of proof has met that burden. The court concludes that, in the present matter, the UST has not succeeded in overcoming the § 707(b) presumption in favor of the debtor. The debtor expends considerable time and effort on a daily basis either participating in or preparing for bicycle races (factor 3); her expertise in both downhill and dual slalom racing have earned her rankings from the National Off–Road Bicycle Association (factor 2); she has won some races in the past (factor 5); she has filed a Schedule C, Profit or Loss (Sole Proprietorship), which would indicate that she has kept track of her income and expenses (factor 1); and the prizes offered in some races can be substantial (factor 7). The debtor has acquired no significant assets, either through her racing activities or otherwise (making factors 4 and 8 inapplicable).

The UST emphasizes the debtor's two years of losses (factor 6), that bicycle racing is a sport considered by many to be recreational (factor 9), and that the debtor "is asking her creditors to pay for her fun." (Motion at 6.) Treasury Regulation 1.183–2(a)(6) provides that, "[a] series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit." The regulation further points out that the speculative nature of an activity does not preclude its being en-

gaged in for profit. *See* Treas.Reg. 1.183(c) Examples 5, 6; *see also Groetzinger*, 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (holding that a taxpayer's gambling activities were a business). The nature of professional sports is such that it involves an activity often engaged in for recreation and one in which a slim chance of success may be compensated for by the size of the reward.

## V.

## *CONCLUSION*

Based on the foregoing analysis, the court concludes that the UST has not overcome the statutory presumption of § 707(b) in favor of granting the debtor the discharge she seeks.[3] The court credits the debtor's testimony that she participates in bicycle racing in the expectation of making a profit and finds her stated intentions adequately supported by the facts and circumstances surrounding her racing activities. Considering the debtor's inability to pay a substantial portion of her indebtedness and the absence of aggravating factors, the court concludes that, under the totality of the circumstances, the motion of the UST to dismiss the debtor's bankruptcy case must be denied. It is

SO ORDERED.

---

**3.** Although the UST's motion also mentions § 707(a) as a basis for dismissal, the parties' papers and post-hearing arguments concerned § 707(b) only. In any event, the record would not support a dismissal under § 707(a).