(October 18, 1994)

■ JESUS ROJAS et al., Appellants, v CITY OF NEW YORK, Defendant, and NEW YORK CITY HOUSING AUTHORITY, Respondent. [617 NYS2d 302] —Judgment, Supreme Court, Bronx County (David Levy, J.), entered October 15, 1992, upon a jury verdict in favor of defendant New York City Housing Authority dismissing the complaint in an action for personal injury, affirmed, without costs.

The lower court properly exercised its discretion in excluding plaintiff's expert testimony and documentary evidence as to the allegedly defective sloping stair. Not only was this claim not alleged in the notice of claim, not mentioned in the complaint, and not set forth in the bill of particulars, but the evidence did not establish that the slope of the stair caused the fall. Plaintiff had no recollection of exactly how the

accident occurred, and plaintiff's expert and counsel both conceded that the accident would have occurred whether or not the stair was slanted.

Nor did the trial court err when it permitted defendant's expert to offer demonstrative testimony regarding the courthouse stairs. Demonstrative evidence is not per se prejudicial and the determination as to its appropriateness lies in the sound discretion of the trial court (see, Harvey v Mazal Am. Partners, 179 AD2d 1, 6-9). Defense was free to introduce evidence of common practice and usage as long as a proper foundation was established (see, Trimarco v Klein, 56 NY2d 98, 106-108). At any rate, when this evidence was introduced, plaintiff objected only to its relevance, not to any alleged prejudicial impact, and did not object to defense counsel's comments on this issue at summation or request a precautionary instruction to the jury. Concur—Murphy, P. J., Rubin and Williams, JJ.

Carro, J., dissents in a memorandum as follows: On December 23, 1988 the plaintiff, Jesus Rojas, while attempting to descend the staircase leading from the second to the first floor of 535 East 143rd Street in the Bronx, slipped on the top step and fell to the bottom landing, striking his head on protruding pipes, which caused him to suffer a traumatic brain hemorrhage and related neuropsychological injuries. The building is owned and maintained by the defendant-respondent New York City Housing Authority.

Plaintiff alleged in his notice of claim and his complaint that he slipped on the stairs which were in an "unsafe and dangerous condition" because they were "cracked, broken, worn, damaged and defective." On May 15, 1989 the Authority conducted a statutory hearing (General Municipal Law § 50-h) at which plaintiff testified through a Spanish interpreter with respect to the slope of the top stair that he slipped on. It should be noted that the interpreter used the word "bent" instead of "sloped," but the Spanish words "inclinada" and "inclinacion" both translate in English to "bent" or "sloped" (New Revised Velazquez Spanish and English Dictionary [1961]; Random House Dictionary of the English Language [unabridged 1981 ed, Spanish-English]).

Plaintiff testified at the hearing that "one of the steps is bent. * * * I slipped because it was bent. I stepped on it and slipped, fell. * * * This one is bent down and I slipped and I fell on top of those things over there." Referring to a photograph, he stated: "It is in this one (indicating). It's the first one here, it's going down. The first one is going down here and

I fell to here, to the last one. * * * [T]hat step is bent so I slipped." On October 30, 1990 the Authority deposed a notice witness, Josepha Laureano, who testified that prior to the incident she had told the Authority that the top stair in question sloped down toward the bottom stairs. This notice was given after she had slipped or tripped on the subject staircase a year earlier. Finally, plaintiff's supplemental response to a demand for expert disclosure revealed that his expert "will testify about the defective construction of the middle landing area. As the enclosed pictures indicate the top step has a worn metal bullnose and slopes downwards. These photographs show the slope to be a 15 degree angle towards the bottom of the stairs."

At trial, portions of the plaintiff's hearing testimony referring to his slip on the "bent" top stair were read to the jury. Plaintiff's expert testified that the stair in question had a low coefficient of friction that rendered it unsafe, and that a 15 degree downward slope of the step made it even more unsafe: "The significance of [the slope of the step] is that * * * as the person goes to step down on the top step their foot is pushed, is directed toward the metal bull-nose on the front of the step. Each of the bull-noses on the steps and the top step itself had a poor coefficient of friction to begin with, but with the added problem of the sloping of the top portion of the step it actually directs the foot right to there. * * * So it wasn't good to begin with but this made it even worse." Plaintiff's expert further testified that in his opinion the cause of plaintiff's fall was "[t]he slipperiness of the stairway and the slope and the top bull-nose."

Despite this testimony, the trial court advised counsel toward the end of the trial that "[t]he slope is out of the case. There is no proof it caused this injury or accident. * * * Your [expert] said it would have happened with or without the slope so it's out of the case." Thereafter, the trial court instructed the jury:" There was some testimony about the steps or the top steps being sloped or swayed and that caused the fall. As a matter of fact, I've taken that out of the case. You are not to consider whether the step was inclined and whether that caused the fall. The main issue in terms of the condition of the steps is whether or not the step is in an unsafe or a dangerous condition because it was slippery. This is the plaintiff's claim and that's the only claim in this case."

The trial court's instruction on this central issue was unjustified and highly prejudicial to the plaintiff's case when viewed in the light of the testimony and prior notices set forth

above. It is self-evident that the hazard created by a slippery condition is exacerbated by an incline, and moreover plaintiff's expert explicitly testified that the slipperiness *and* slope of the stair contributed to plaintiff's fall. The majority's observation that the slope of the top stair was not specifically mentioned in the notice of claim, the complaint or the bill of particulars is irrelevant in light of the fact that the trial court precluded the jury's consideration of testimony relating to the slope of the stair *not* on the basis of surprise (a failure of notice or pleading), but because there was "no proof it caused this injury or accident," and plaintiff's expert testified that the accident "would have happened with or without the slope." The trial court's conclusion, repeated herein by the majority, that there was no proof that the slope caused the accident, is not supported by the record. The plaintiff testified that he slipped on the step "because it was bent," and plaintiff's expert testified that the cause of plaintiff's fall was the slipperiness and slope of the step. Interestingly, the trial court told the jury, correctly, that "[t]here was some testimony about the steps or the top steps being sloped or swayed and that caused the fall." The jury should not have been precluded from considering that evidence.

With respect to the trial court's observation that plaintiff's expert testified that the accident would have happened "with or without the slope," the jury might have rejected that testimony and concluded that the accident would not have occurred without the slope. Thus the jury might have concluded that it was the *combination* of the slipperiness and slope of the step that caused the plaintiff to fall, but they were denied the opportunity to consider that possibility despite plaintiff's expert's conclusion that the coefficient of friction "wasn't good to begin with but this [the slope] made it even worse." While opining that the accident would have happened with or without the slope, the expert testified that the slope "certainly could have contributed to it."

Given the testimony of the plaintiff and his expert, the jury should not have been limited to finding that the slipperiness of the step was the sole cause of the accident, or finding for the defendant, since the testimony would have supported a finding that the slope of the step was "a substantial causative factor" with respect to the plaintiff's accident and injuries *(Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520; *Galioto v Lakeside Hosp.,* 123 AD2d 421). The New York Pattern Jury Instructions, as amended, state: "An act or omission is a proximate cause of an injury if it was a substantial factor in

bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury." (PJI 2:70 [Supp].) The 1993 Supplement to PJI 2:70 adds this comment: "Caveat: In most cases care should be taken to use the phrases 'a proximate cause' and 'a substantial factor,' and to *avoid* the use of the phrases 'the proximate cause' and 'that cause' in order to prevent the erroneous implication that there can be only one proximate cause" (emphasis in original). Here, as previously noted, plaintiff's evidence supported a finding that the accident was caused by the slipperiness and the slope of the top stair, and the jury should have been permitted to consider all the evidence in determining whether both defects in the stair, taken together, rendered the defendant liable for the plaintiff's injuries. Accordingly the judgment in favor of defendant-respondent, the New York City Housing Authority, entered October 15, 1992, should be reversed, and the matter remanded for a new trial.