09-1052-cv
Federal Deposit Insurance Corporation v. Great American Insurance Company

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term 2009

(Argued: November 16, 2009          Decided: June 7, 2010)

Docket No. 09-1052-cv

_____

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER OF CONNECTICUT BANK OF COMMERCE,

Plaintiff-Counter-Defendant-Appellant,

-against-

GREAT AMERICAN INSURANCE COMPANY,

Defendant-Counterclaimant-Appellee.

_____

Before:    POOLER and WESLEY, Circuit Judges, and KEENAN,
           District Judge.*

_____

Appeal from an order of the United States District Court for the District of Connecticut (Bryant, J.) entered on February 13, 2009, granting summary judgment to Defendant in an action for breach of an insurance contract, and finding that Defendant was entitled to rescind a fidelity bond on the basis of material misrepresentations contained in Plaintiff's application for insurance.

AFFIRMED.

_____

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

KYLE M. KEEGAN, CHRISTOPHER D. KIESEL, Roy, Kiesel, Keegan & DiNicola, PLC, Baton Rouge, LA; JOHN B. HUGHES, Assistant United States Attorney, for NORA R. DANNEHY, Acting United States Attorney for the District of Connecticut; LAWRENCE H. RICHMOND, JACLYN C. TANER, Federal Deposit Insurance Corporation, Arlington, VA, for Plaintiff-Counter-Defendant-Appellant.

F. JOSEPH NEALON (Jennifer E. Lattimore on the brief), Eckert Seamans Cherin & Mellott, LLC, Washington, DC; MARGARET LITTLE, Little & Little, Stratford, CT for Defendant-Counterclaimant-Appellee.

KEENAN, District Judge:

## I. BACKGROUND

The following facts are not in dispute. In 1999, Connecticut Bank of Commerce ("CBC"), having assets of approximately $89 million, entered into a Purchase and Assumption Agreement (the "P&A Agreement") to acquire MTB Bank ("MTB"), a New York bank with approximately $299 million in assets. CBC purchased substantially all of MTB's assets, including its factoring unit. This transaction required Federal Deposit Insurance Corporation ("FDIC") approval, which MTB sought on August 4, 1999 and obtained on February 5, 2000. At the time MTB and CBC entered into the P&A Agreement, MTB had a 15-year insurance relationship with Lloyd's of

2

London and was covered by a Lloyd's fidelity bond set to expire on June 30, 2000.

Several events which occurred prior to the closing of the P&A Agreement bear on the contract dispute at hand. First, in September of 1999, MTB management discovered that one or more of MTB's agents advanced $950,000 based on fraudulent invoices under a factoring agreement with a company called Harmony Designs, Inc. MTB submitted a claim for indemnity under the Lloyd's fidelity bond. However, MTB eventually settled with Harmony Designs for an amount which reduced its loss below the deductible of the Lloyd's bond; therefore MTB never recovered payment from Lloyd's for this claim. Additionally, in March 2000, the president and several other officers of MTB were indicted in an alleged conspiracy involving the importation of Argentinian minerals. MTB submitted a claim to Lloyd's for its losses relating to the conduct resulting in the indictments. On March 31, 2000, the P&A Agreement was finalized.

After the completion of the P&A Agreement, CBC was added to MTB's insurance policy with Lloyd's. As the bond expired on June 30, 2000, CBC began to seek renewal of the Lloyd's policy. However, Lloyd's was concerned about the two claims that MTB had made, and it refused to renew coverage unless CBC representatives went to Lloyds' headquarters in London for a meeting. No one from CBC went to London. Two weeks prior to the bond's expiration, CBC

3

requested a 30-day extension of coverage, but Lloyd's declined to offer any extension beyond the June 30, 2000 expiration date.

CBC then sought the assistance of an insurance broker to procure fidelity insurance to replace the Lloyd's policy. CBC's Chief Financial Officer, Barbara Van Bergen ("Van Bergen"), filled out an application for insurance from Reliance Insurance Company (the "Reliance application") on behalf of CBC. Van Bergen signed the Reliance application on June 19, 2000 and gave it to CBC's insurance broker, who, following common practice in the industry, submitted it to multiple insurers to receive quotes. On June 30, 2000, CBC's insurance broker submitted the Reliance application to Great American Insurance Company ("GAIC").

The application contained the following questions:

List all losses sustained during the past three years, whether reimbursed or not;

[Does CBC have] any knowledge of or information concerning any occurrence or circumstance whatsoever which might materially affect this [insurance] proposal?;

Has any insurance of this nature been declined or cancelled during the past three years?

Van Bergen on behalf of CBC answered "None," "No," and "No," to these three questions, respectively.

The Reliance application included the following affirmance above the signature line: "The Applicant represents that the information furnished in this application is complete, true and

4

correct. Any misrepresentation, omission, concealment, or incorrect statement of a material fact, in this application or otherwise, shall be grounds for the rescission of any bond issued in reliance upon such information."

In late June, GAIC issued a quote for fidelity insurance to CBC on the basis of information contained in the Reliance application. On July 19, 2000, GAIC issued a fidelity bond to CBC with coverage retroactive to June 30, 2000. After GAIC bound coverage, CBC additionally completed a GAIC insurance application. Just as she did in the Reliance application, Van Bergen stated in the GAIC application that CBC had not sustained any losses and no insurance had been declined or cancelled in the prior three years; however, the GAIC application did not contain a question regarding any knowledge or information which might materially affect the insurance proposal. The GAIC fidelity bond states that "[t]he Insured represents that the information furnished in the application for this bond is complete, true and correct. Such application constitutes part of this bond. Any misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond." The fidelity bond further specified that GAIC issued coverage "in reliance upon all statements made and information furnished to the Underwriter by the Insured in applying for this bond."

When the Reliance application was completed and submitted, CBC knew about both the Harmony Designs claim and the indictments of MTB's officers.  CBC also knew that Lloyd's had declined to renew or extend coverage of its fidelity bond.  The GAIC agent who reviewed CBC's application testified that GAIC would not have issued the fidelity bond had CBC disclosed this information.

CBC went into FDIC receivership on June 26, 2002.  On January 18, 2006, the FDIC, standing in the shoes of CBC, brought this suit claiming that GAIC breached its contractual duty by dishonoring claims for coverage under the fidelity bond for losses sustained by CBC related to a loan scheme that was used to fund the acquisition of MTB.  The district court granted summary judgment to GAIC on the ground that it properly rescinded the fidelity bond due to omissions and misstatements made by CBC in its application for the fidelity bond.

## II. DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment.  N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 556 F.3d 114, 122 (2d Cir. 2009).  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the

6

initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. To defeat a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Where it is clear that no rational finder of fact "could find in favor of the nonmoving party because the evidence to support its case is so slight," summary judgment should be granted. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. Section 1823(e)

The FDIC argues that 12 U.S.C. § 1823(e), which protects the FDIC from defenses not apparent on the face of an asset it acquires as receiver of a failed bank, bars GAIC's misrepresentation defense. In pertinent part, Section 1823(e) reads as follows:

7

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement-

> (A) is in writing,

> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

The FDIC contends that the district court erred by limiting the statute's definition of "asset" to exclude fidelity bonds, and thus the rescission clause of the bond should not apply. Two Courts of Appeals previously have decided this issue: the Sixth Circuit, which held similarly to the district court that fidelity bonds are not assets under the purview of Section 1823(e)(1), and the Tenth Circuit, which held that a fidelity bond is an "asset." This Court has never decided whether a fidelity bond is an asset for the purposes of Section 1823(e)(1), although, as discussed in detail below, that is not necessarily determinative of this appeal. Nonetheless, we believe the district court erred in ruling that the fidelity bond is not an "asset."

8

We agree with the Tenth Circuit's holding in <u>Federal Deposit Insurance Corporation v. Oldenburg</u>, 34 F.3d 1529 (10th Cir. 1994), that a fidelity bond qualifies as an "asset" for the purposes of Section 1823(e).  Citing Eighth Circuit precedent, that court held that if a statute's plain language is unambiguous - as is Section 1823(e) - it must apply that patent meaning unless the result would be "demonstrably at odds with the intentions of its drafters."  <u>Id.</u> at 1552 (citing <u>N. Ark. Med. Ctr. v. Barrett</u>, 962 F.2d 780, 787 (8th Cir. 1992)).

We do not believe that applying Section 1823(e) to a fidelity bond is beyond the intent of Congress.  As the Tenth Circuit found:

> Federal regulators expressly rely on a bank's fidelity coverage as one factor in determining whether a bank is financially capable of continuing its operations. While it is true that insurance contracts, due to their conditional nature, are not as prone to instantaneous assessment as promissory notes, it does not logically follow that unrecorded or collateral agreements which may diminish or defeat the interest of the Corporation in fidelity bonds should therefore be exempt from coverage under the statute.  Despite the conditional nature of some insurance contracts, the FDIC's evaluation of a bank's fidelity bonds both before and during the course of a purchase and assumption transaction is certainly facilitated if the acquired bonds are not subject to side agreements or collateral conditions completely beyond the scope of the bonds. Banking examiners who inspect and evaluate the bank records reasonably expect the records of regular banking transactions to reflect <u>all</u> of the rights and liabilities of the bank regarding such regular banking transactions.  This proposition is as applicable to fidelity bonds as it is to promissory notes and negotiable instruments.

<u>Id.</u> at 1553-54 (internal quotation marks and citations omitted).

9

We do not accept the position of the Sixth Circuit as set forth in Federal Deposit Insurance Corporation v. Aetna Casualty & Surety Company, 947 F.2d 196 (6th Cir. 1991). Congress made no real effort to limit the term "asset" in the statute. Congress knew, when passing 12 U.S.C. § 1823(e), that the FDIC as receiver acquires all of a failed banks rights, not just traditional banking assets. Moreover, despite a fidelity bond's conditional nature, this interpretation is most consistent with our previous holding that the term "asset" in Section 1823(e) "should be interpreted broadly." Inn at Saratoga Assocs. v. Fed. Deposit Ins. Corp., 60 F.3d 78, 81-82 (2d Cir. 1995).

Even though we consider the fidelity bond to be an asset under 12 U.S.C. § 1823(e), this provision exists to bar "secret" defenses which would diminish the FDIC's interest in a failed bank's assets. See Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 49-50 (1st Cir. 1991); Howell v. Cont'l Credit Corp., 655 F.2d 743, 746 (7th Cir. 1981); see also Fed. Sav. & Loan Ins. Corp. v. Two Rivers Assocs., Inc., 880 F.2d 1267, 1275 (11th Cir. 1989) (FSLIC acting as receiver). Defenses raised by the bond itself may prevent recovery by the FDIC. It is GAIC's position that rescission of the fidelity bond was in accord with its terms allowing such action on the basis of a "misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise." As the grounds for rescission were plainly stated on the face of

10

the bond, there is nothing secret about GAIC's misrepresentation defense, and no cause to apply Section 1823(e). To honor the FDIC's position and allow it to recover despite misrepresentations in CBC's insurance application would be to strike the rescission clause from the bond.

The FDIC theorizes that the district court confused the Reliance application with GAIC's own insurance application such that, in allowing GAIC to rescind the fidelity bond on the basis of statements in the Reliance application, the court applied a defense beyond the face of the bond. We find no such error, first and foremost, because the fidelity bond itself specified that "any misrepresentation, omission, concealment or any incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this bond." (emphasis added). There is no basis for the FDIC's argument that the fidelity bond incorporated only GAIC's own application and not the Reliance application. Provisions in the bond specifying that GAIC relied on "all statements made and information furnished . . . by the Insured in applying for this bond," and that CBC "represents that the information furnished in the application for this bond is complete, true and correct [and such] application constitutes part of this bond" are not so limiting as the FDIC suggests. In this case, CBC submitted two substantially similar applications, neither of which reported any losses or insurance cancellation in the prior three years. GAIC

11

was entitled to consider the Reliance application part of the "information furnished" and "such application" and to rescind the bond based on statements made therein to the extent they were material misrepresentations.

### C. Grounds for Rescission in the Bond

Therefore, the relevant inquiry is whether CBC's failure to report the Harmony Designs loss, the indictments of MTB officers, and Lloyds' decision not to renew or extend its fidelity bond were in fact material misrepresentations. Although a single misrepresentation entitles GAIC to rescind the bond, we will consider each of the three statements individually. As did the district court, we borrow general principles of Connecticut insurance law to interpret the terms of the fidelity bond. Under Connecticut law, an insurance policy is voidable by the insurer if the applicant made "[m]aterial representations . . ., relied on by the company, which were untrue, and known by the assured to be untrue when made." Middlesex Mut. Assurance Co. v. Walsh, 590 A.2d 957, 963 (Conn. 1991) (quoting State Bank & Trust Co. v. Conn. Gen. Life Ins. Co., 145 A. 565, 567 (Conn. 1929)) (emphasis omitted). To succeed on a defense of misrepresentation, GAIC as the movant bears the burden of establishing "(1) a misrepresentation (or untrue statement) by the plaintiff which was (2) knowingly made and (3) material to defendant's decision whether to insure." Pinette v. Assurance Co. of Am., 52 F.3d 407, 409 (2d Cir. 1995). The determination of whether an answer

12

in an insurance application is untrue must be made "in light of the question asked." Walsh, 590 A.2d at 964. Where a question in the application is ambiguously worded and the applicant "could reasonably have understood the question as calling for a particular response, and the response given in accordance with that understanding is not false, the response does not amount to a misrepresentation." Id. at 965.

Additionally, a fact is material if "it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." Pinette, 52 F.3d at 411 (quoting Davis Scofield Co. v. Agric. Ins. Co., 145 A. 38, 40 (Conn. 1929)). "Matters made the subject of special inquiry are deemed conclusively material." State Bank & Trust Co., 145 A. at 566; see also id. ("Where the representation is contained in an answer to a question contained in the application which is made a part of the policy, the inquiry and answer are tantamount to an agreement that the matter inquired about is material.").

First, we take up CBC's failure to report the $950,000 advanced by MTB agents based on fraudulent invoices under the factoring agreement with Harmony Designs. The Reliance application (as well as the GAIC application) asked whether the applicant had sustained any losses in the prior three years, and CBC replied "None." We see no ambiguity in the question and no reason to construe it, as Van Bergen allegedly did, to refer to

13

losses sustained by CBC but not MTB. At the time she completed the application, the relevant applicant was the newly expanded CBC, a company which included MTB's factoring business and eventually recouped some of the loss from Harmony Designs. It is undisputed that CBC knew about the Harmony Designs loss when it acquired MTB's factoring unit, knew that the loss played a role in Lloyds' decision not to renew or extend its fidelity bond for the CBC-MTB entity, and knew about the loss when it applied for new fidelity coverage from GAIC. Keeping in mind that the application was for insurance that would cover precisely the type of loss which occurred with the Harmony Designs fraud, no reasonable interpretation of the question would lead to the conclusion that "None" was a complete and truthful answer.

As prior losses were the subject of specific inquiry, CBC's response is presumptively material. Moreover, "[c]ommon sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium." Pinette, 52 F.3d at 411. Consequently, there is no factual issue, and GAIC was entitled to rescind the fidelity bond on the basis of CBC's material misrepresentation that it had not sustained any losses in the prior three years.

Next, we turn to CBC's failure to disclose the indictments of MTB officers. GAIC argues that this information was relevant to the prompt for reporting losses in the previous three years,

14

as well as to a catch-all question which requested "any knowledge of or information concerning any occurrence or circumstance whatsoever which might materially affect" the insurer's decision to issue fidelity coverage. Again, it is undisputed that CBC was aware of the indictments and resulting losses - for which CBC sought recovery under the Lloyd's bond - at the time it applied for new fidelity coverage. The FDIC argues that the indictments had no bearing on its insurance risk profile because CBC did not purchase the precious metals business or employ the indicted officers. However, this after-the-fact justification does not diminish the materiality of the disclosures. As we have already established, information about previous losses is presumptively material. It follows that information that losses were incurred under a cloud of criminal suspicion is also material. Moreover, the determination of risk is one properly left to the insurer, not the insured, and the insurer cannot make an accurate risk assessment without full disclosure from the applicant. The very purpose of such broadly worded catch-all questions is to prevent the type of self-selective reporting that occurred here. It must be noted that CBC had specific reason to know that this information would substantially influence a potential insurer's decision to issue a fidelity bond because Lloyd's explicitly stated that it was "very concerned at the allegations being made against senior officials of [MTB]" and would not renew its CBC-MTB bond absent a face-to-face meeting to discuss, among other

15

things, the indictments. We find no issue of fact that CBC's failure to report the indictments of MTB officers and resulting losses in the Reliance application constituted a material misrepresentation.

Finally, we consider the issue of CBC's failure to disclose Lloyds' decision not to renew or extend its fidelity coverage. The Reliance and GAIC applications asked whether insurance of a similar nature had been declined or cancelled in the previous three years, and CBC answered "No." However, at the time it responded, CBC was aware that Lloyd's declined to renew its fidelity coverage for the new CBC-MTB entity and it refused to grant CBC a 30-day extension of its expiring coverage. The FDIC argues that CBC walked away from Lloyd's and not vice versa, thus CBC did not interpret the question to require information regarding coverage it chose not to renew.

The FDIC urges a narrow and overly literal reading of the question to include instances where an insurer cancelled a policy prior to its expiration, or rejected a new application, but not those where existing coverage was not renewed or extended. We find no ambiguity, either in the wording of the question or the type of information it intends to solicit. Both terms used in the Reliance application - "declined" or "cancelled" - seek information regarding another company's unwillingness to insure. Knowledge of Lloyds' initial reluctance and ultimate refusal to continue its bond would have alerted GAIC to potential red flags,

16

prompting a careful review of CBC's application to accurately appraise the risks to be insured. Although CBC ultimately did not take the necessary steps to renew the Lloyd's bond, and in that sense "walked away" from its insurer, Lloyd's made it clear that the only way to obtain continuing coverage would be to attend a meeting in London, and even that meeting could not guarantee renewal. Furthermore, CBC sought a 30-day extension of the CBC-MTB fidelity bond, which Lloyd's rejected in light of outstanding claims. Lloyds' actions fall within the scope of the request for information about prior insurance cancellation or declination. As this was a subject of specific inquiry, the information is material.

We additionally find that even if we were to agree with the FDIC's interpretation of the Reliance application, we would nevertheless hold that the information regarding Lloyds' non-renewal and refusal to extend coverage should have been disclosed in the catch-all question; no reasonable construal of the request for any "information concerning any occurrence or circumstance whatsoever which might materially affect this proposal" would exclude CBC's negotiations with Lloyd's. Therefore, CBC's statement that no coverage had been cancelled or declined was a material misrepresentation for which GAIC was entitled to rescind the fidelity bond. We have considered the FDIC's other arguments and do not find them persuasive.

17

## III. CONCLUSION

For the reasons set forth above, we conclude that, although a fidelity bond is an asset for the purposes of 12 U.S.C. § 1823(e), defenses on the face of the bond entitled GAIC to rescind coverage.  The district court properly granted summary judgment in favor of Defendant, and its judgment of February 13, 2009 is hereby AFFIRMED.