14-3087-cv
*Sahu v. Union Carbide Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of May, two thousand sixteen.

Present:
>PETER W. HALL,
>DEBRA ANN LIVINGSTON,
>> *Circuit Judges,*
>ALVIN K. HELLERSTEIN,
>> *District Judge.*[1]

_____

JAGARNATH SAHU, on behalf of themselves and all others similarly situated, OHMWATI BAI, on behalf of themselves and all others similarly situated, MOHAN LAL SEN, on behalf of themselves and all others similarly situated, QAMAR SULTAN, on behalf of themselves and all others similarly situated, MEENU RAWAT, on behalf of themselves and all others similarly situated, MAKSOOD AHMED, on behalf of themselves and all others similarly situated, KRISHNA BAI, on behalf of themselves and all others similarly situated, KANTI DEVI CHAUHAN, on behalf of themselves and all others similarly situated, RAGHUNATH VISHWAKERMA, on behalf of themselves and all others similarly situated, HARCHARAN CHAURASIA, on behalf of themselves and all others similarly situated, MOHAMMAD BAHADUR SHAH, on behalf of themselves and all others similarly situated, SHASHI BHAGEL, on behalf of themselves and all others similarly situated, KAMALA BAI SHRIVASTAV, on behalf of themselves and all others similarly situated, HARISHANKAR TOMAR, on behalf of themselves and all others similarly situated, SHANTI AIHRWAR, on behalf of themselves and all others similarly situated, ASGARI BEE, on behalf of themselves and all others similarly situated, ZAMIL KHAN, on behalf of

---

[1] Hon. Alvin K. Hellerstein, United States District Court for the Southern District of New York, sitting by designation.

1

themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.                                                            No. 14-3087-cv

UNION CARBIDE CORPORATION, MADHYA PRADESH
STATE,

*Defendant-Appellee.*

---

APPEARING FOR APPELLANT:   RICHARD L. HERZ, Earthrights International,
                           Washington, DC (Reena Gambhir, Hausfeld LLP,
                           Washington, DC, H. Rajan Sharma, Sharma & DeYoung
                           LLP, New York, NY, and Curtis V. Trinko, LLP, New
                           York, NY, *on the brief*).

APPEARING FOR APPELLEE:    WILLIAM A. KROHLEY (William Charles Heck, *on the
                           brief*) Kelley, Drye & Warren, LLP, New York, NY.

---

Appeal from a judgment of the United States District Court for the Southern District of
New York (John F. Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED** that the judgment entered on July 30, 2014, is **AFFIRMED**.

This case is the latest chapter in years of litigation arising from the operations of a
pesticide factory in Bhopal, India. The factory was owned and operated by Union Carbide India
Limited ("UCIL"), a corporation incorporated in India in 1934. A majority of UCIL's stock,
during the Bhopal plant's operations, from 1969 to 1984, was owned by Union Carbide
Corporation ("UCC"), a U.S. corporation.

The history of the Bhopal plant and the previous chapters of this litigation have been
described in earlier decisions. *See Bano v. Union Carbide Corp.*, 361 F. 3d 696 (2d Cir. 2004);
*Sahu v. Union Carbide Corp.*, 528 F. App'x 96 (2d Cir. 2013) (*Sahu I*). Owners and occupants
of land near to the Bhopal plant, in several iterations of lawsuits, have sought relief against UCC

2

for injuries resulting from hazardous contaminants attributed to the plant's inadequate waste management system. We have already addressed part of this evidentiary record in *Sahu I*, a separate suit filed in 2004 by some of the same plaintiffs to recover for personal injuries.[2] *Sahu I* was dismissed by the District Court (Keenan, J.) and, after remand to allow additional discovery, dismissed again and affirmed on appeal. We noted that even after undertaking "a discovery expedition worthy of Vasco de Gama," 528 F. App'x at 100 (quoting *Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825JFK, 2012 WL 2422757, at *2 (S.D.N.Y. June 26, 2012)), "it is clear from the undisputed facts that UCIL, and not UCC, designed and built the actual waste disposal system," *id.* at 102.

In the present case, the plaintiffs again try to establish UCC's liability.[3] Plaintiffs Jagarnath Sahu and several other similarly situated property-owners (collectively, "Sahu") have brought this separate action to recover for property damage, alleging claims sounding in nuisance, trespass, strict liability, and negligence. Building on the record established in *Sahu I*, Sahu claimed new evidence established UCC's responsibility, and sought leave to take a

---

[2] The plaintiffs in these actions were absent class members in a 1999 class action brought against UCC and ultimately dismissed. *See Bano v. Union Carbide Corp.*, No. 99-cv-11329 (S.D.N.Y.). The plaintiffs' personal injury claims were barred under New York's three year statute-of-limitations. *Bano v. Union Carbide Corp.*, No. 99 Civ. 11329JFK, 2003 WL 1344884, at *5 (S.D.N.Y. Mar. 18, 2003), *aff'd in part, vacated in part*, 361 F.3d 696 (2d Cir. 2004). Remaining property claims were later dismissed as not viable because the lead plaintiff owned no property. *Bano v. Union Carbide Corp.*, No. 99 Civ. 11329(JFK), 2005 WL 2464589, at *4 (S.D.N.Y. Oct. 5, 2005), *aff'd*, 198 F. App'x 32 (2d Cir. 2006).

[3] As the District Court's opinion describes in detail, the plaintiffs commenced this action while *Sahu I* was before the Second Circuit on appeal. The plaintiffs, some of whom appeared in *Sahu I* and some who did not, sought to toll the statute of limitations on various property damage claims not included in the 2004 action. *See Sahu v. Union Carbide Corp.*, No. 07 Civ. 2156(JFK), 2014 WL 3765556, at *1 (S.D.N.Y. July 30, 2014). The District Court acknowledged that this action involves many of the same parties as *Sahu I* and that collateral estoppel might apply to plaintiffs present in both. However, the District Court addressed the claims of all plaintiffs on the merits, and we shall do the same. *Id.* at *3.

deposition of a former UCC employee, Lucas John Couvaras, to provide additional evidence to oppose summary judgment, *see* Fed. R. Civ. P. 56(d), and to preserve his testimony in light of his advanced age, *see* Fed. R. Civ. P. 26 and 30. The District Court ruled that the evidence was not sufficient, denied the request for a deposition, and dismissed the lawsuit, a decision Sahu appeals. We affirm.

Sahu raises three arguments on appeal: that the District Court disregarded Sahu's new evidence, applied an erroneous legal standard under New York tort law of causation, and erred in disallowing the preservation deposition of an elderly witness.

## I.    Summary Judgment

"We review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). A court shall grant summary judgment only if "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

### A. New Evidence

Sahu's primary argument on appeal is that its new evidence "fills the gaps identified in *Sahu I*." Appellants' Br. 3. Sahu presents a declaration from L.J. Couvaras, a project manager at

UCIL, as to his ongoing employment relationship with UCC. Sahu claims that such evidence proves the missing link in causation: that UCC, through its agent Couvaras, was directly involved in the engineering and construction of the Bhopal plant. We agree with the District Court that Sahu's offer of "new evidence" does not accomplish his intended result.

Couvaras states in his declaration that he "was a UCC employee assigned to UCIL from 1971 to the end of 1981, to manage the engineering and construction of the plant based on proprietary design." J.A. 3298. Couvaras's declaration gives no specifics as to what he did, or as to his role and responsibilities. That information is already in the extensive record. The Definition of Services between UCC and UCIL stated that UCC's Chemicals and Plastics Engineering Department would provide "a project manager on loan to UCIL for the project." *Id.* at 2676. Project management was listed as UCIL's responsibility. Thus, UCC "lent" Couvaras to UCIL, to manage the project for, and under the supervision of, UCIL. In a 1985 affidavit, UCIL-employee Ranjit Dutta described Couvaras's reporting position within UCIL. Dutta identified Couvaras as a UCIL employee, and an employee that he had himself supervised. "As a UCIL employee, [Couvaras] also reported to UCIL management and all of his activities on the project were supervised and directed by UICL's management."[4] *Id.* at 1997. The record also includes copies of Annexures to UCIL's Annual Reports of the Directors, identifying Couvaras as a UCIL employee.

Couvaras's declaration is consistent with this record evidence, that his work was for UCIL, not UCC. He reiterates the division of responsibilities described in the documents, that UCC's role was to furnish the process design reports, which "were prepared by UCC-Technical Center in Charleston, West Virginia," and that "UCIL provided all the other administration and

---

[4] Sahu asserts that the District Court overlooked impeachment evidence from a later transcribed interview. But Dutta nowhere in that interview contradicted the statement that Couvaras was a UCIL employee who reported to him. J.A. 2937.

5

engineering staff to execute the project, using local contractors and material suppliers required by the Government of India." *Id.* at 3298. Nor does he dispute that his work was within UCIL's domain and that the "engineering and construction group formed in India to implement the project" "was entirely UCIL employees." *Id.*

Sahu also furnishes a new declaration from plant operator T.R. Chauhan, who asserts that Couvaras worked "[o]n behalf of UCC." *Id.* at 3335. Chauhan does not describe any personal knowledge about Couvaras's status or responsibilities, nor substantiate this assertion. Nothing in his biographical details suggests that Chauhan had any knowledge that Couvaras reported to, or was supervised by, UCC, rather than UCIL. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated."). Sahu argues that "it is credible that someone in [Chauhan's] position would learn these facts," but Sahu's supposition does not create facts. Appellants' Br. 34. Sahu also points to the 1985 affidavit of UCIL employee Edward Munoz, which states that the UCC Group I engineering department "selected the Union Carbide Corporation employee who acted as the Project Manager to oversee the design and construction of [a portion of the Bhopal] plant." J.A. 2899. But Munoz's affidavit only reiterates what we already know from the record and, particularly, the Definition of Services between UCC and UCIL, that UCC's Chemicals and Plastics Engineering Department would provide "a project manager on loan to UCIL for the project," and that UCIL was "responsible for the over-all venture." *Id.* at 2676, 2675.

Sahu's argument does not impeach or rebut the extensive evidence of Couvaras's role, that he was lent by UCC to UCIL and, as project manager for UCIL, was answerable to, and supervised by, UCIL. The District Court rightly determined that "[c]onclusory allegations" arguing for Couvaras's ongoing affiliation with UCC were insufficient to defeat summary

6

judgment. *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003); *see also Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion."). "[N]o rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight.'" *F.D.I.C.*, 607 F.3d at 292 (quoting *Gallo*, 22 F.3d at 1224).

Sahu also argues that declarations from two experts, Dr. Jurgen H. Exner and Dr. Ian H. von Lindern, constitute new evidence of UCC's involvement in the plant's waste management system. J.A. 3300, 3309. The District Court found that Sahu, without "evidence of actual tortious conduct by UCC . . . seek[s] instead to lump together all of the steps" that led to the production of certain chemicals at the Bhopal plant. *Sahu*, 2014 WL 3765556, at *11. We agree.

The experts contend that the process engineering and design, furnished by UCC, in fact created the disposal problems at the Bhopal plant. In so doing, these experts only "blur[]" the distinction between UCC and UCIL's respective responsibilities. *Id.* These experts are not offering new factual evidence, but rather, are offering conclusions based on the same evidence that we addressed and found lacking in *Sahu I.* 528 F. App'x at 104 ("Sahu and many others living near the Bhopal plant may well have suffered terrible and lasting injuries from a wholly preventable disaster for which someone is responsible. After nine years of contentious litigation and discovery . . . all that the evidence in this case demonstrates is that UCC is not that entity."). None of the new evidence presented here changes that conclusion.

**B. Legal Standard for Causation**

Sahu argues, based on our recent decision in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 725 F.3d 65 (2d Cir. 2013), that the District Court misinterpeted

7

the legal standard for causation and erroneously found that only the party responsible for actual waste disposal could be subject to liability. Sahu misconstrues the District Court's opinion.

Quoting *MTBE*, the District Court correctly ruled that a defendant could be liable when its conduct was a "substantial factor in" bringing about the injury, *MTBE*, 725 F.3d at 116 (quoting *Schneider v. Diallo*, 788 N.Y.S.2d 366, 367 (1st Dep't 2005)), where its conduct "had such an effect in producing the injury that reasonable people would regard it as a cause," *id.* (quoting *Rojas v. City of New York*, 617 N.Y.S.2d 302, 305 (1st Dep't 1994)). The District Court then inquired, consistent with *MTBE*, "whether UCC played a sufficiently direct role in causing the hazardous wastes to seep into the ground to be held liable." *Sahu*, 2014 WL 3765556, at *7 (quoting *Sahu I*, 528 F. App'x at 101-02); *MTBE*, 725 F.3d at 121 ("[T]he City offered testimony that Exxon knew station owners would store this gasoline in underground tanks that leaked, and introduced evidence that Exxon knew specifically that tanks in the New York City area leaked.").

In *MTBE*, the defendant's knowledge of a risk and "substantial[] certain[ty]" about the ultimate injury constituted "tortious conduct" that "sufficed to demonstrate [defendant's] participation in a nuisance and trespass." *Sahu*, 2014 WL 3765556, at *8 (citing *MTBE*, 725 F.3d at 120). But in contrast to the defendant in *MTBE*, there is no indication on this record that UCC had knowledge that the Bhopal plant's waste management system would leak, or that such leaks would lead to local contamination. As the District Court's opinion thoroughly sets forth, no reasonable juror could find that UCC participated in the creation of the injury on any theory of liability.

## II.    Deposition

Sahu also argues that the District Court erred in declining to allow the deposition of Couvaras. The District Court's denial of a preservation deposition is reviewed for an abuse of

8

discretion. *Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371, 1374 (D.C. Cir. 1995). Sahu argues that Couvaras is uniquely qualified to explain the relationship between UCC and UCIL. But the extensive evidentiary record, accumulated over years of litigation, provides a thorough picture of the relationship between UCC and UCIL as to the Bhopal plant. Sahu speculates that Couvaras's deposition will somehow alter what the ample record demonstrates. However, there is no indication in Couvaras's declaration that Couvaras knows of any new detail to supplement or change the existing evidence. The District Court did not abuse its discretion in rejecting a further deposition.

## III.    Conclusion

The District Court found that Sahu's offer of new evidence was insufficient to raise an issue of material fact in opposition to UCC's summary judgment motion. For the reasons set forth above, we AFFIRM the judgment of the District Court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

9