16-632-cv
*Tubo v. Orange Reg. Med. Ctr.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand seventeen.

PRESENT:
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

---

KARIDIS TUBO,

        *Plaintiff-Appellant*,

    v.                                  No. 16-632-cv

ORANGE REGIONAL MEDICAL CENTER,

        *Defendant-Appellee.*

---

| | |
|---|---|
| For Plaintiff-Appellant: | MICHAEL D. DIEDERICH, JR., Stony Point, New York. |
| For Defendant-Appellee: | MARY A. SMITH, Jackson Lewis P.C., White Plains, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Karidis Tubo ("Tubo") appeals from a final judgment granting summary judgment in favor of Defendant Orange Regional Medical Center (the "Hospital") and dismissing her claims for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL"); retaliation in violation of these three statutes; and breach of contract and violation of New York Labor Law ("NYLL") premised on the Hospital's failure to pay Tubo earned vacation time upon her termination. We assume the parties' familiarity with the underlying facts and the procedural history of this case.

We review *de novo* an award of summary judgment. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010); *see also Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

**A. Discrimination Claims**

Claims for race discrimination under Title VII, § 1981, or the NYSHRL are analyzed under the *McDonnell-Douglas* burden-shifting framework. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3)

she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the plaintiff's termination. *Id.* If the defendant proffers a nondiscriminatory reason for the termination, the presumption falls away, and summary judgment for the defendant is appropriate "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

### i. Prima Facie Case of Discrimination

We agree with the district court that Tubo failed to establish a prima facie case of discrimination because she did not demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination. Tubo asserts that her employer demonstrated discriminatory bias by, *inter alia*, excluding her from nursing leadership meetings, requiring her to perform the job of three people, and denying her requests for support staff that other administrators and directors had allegedly received. The record reflects, however, that Tubo was not invited to director meetings because she was an administrator, not a director, and that she did not receive the clinical support she felt she needed because her department was already overstaffed.

Tubo also disagrees with the Hospital's negative assessment of her performance. Such disagreement, however, is insufficient to raise a jury issue as to discrimination. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717–18 (2d Cir. 1994) (observing that "[d]ismissals are often preceded by adverse performance reviews," and a plaintiff's belief that a performance evaluation is "unjust" is insufficient to justify an inference of discrimination). Further, although

3

Tubo contends that she should have been placed on a performance improvement plan ("PIP") as an alternative to her termination, she does not point to similarly-situated employees outside of her protected class who were placed on a PIP in lieu of being discharged. To the contrary, around the time of Tubo's termination, the Hospital terminated the employment of a Caucasian administrator-level employee without first placing that employee on a PIP.

Tubo asserted in a declaration that she was "replaced by one, and then three, Caucasian employees with less skill, experience and qualification[s]." J. App'x 505. This is not supported by the record. Although Tubo stated that, prior to her termination, she "trained" Debra Beakes (a purportedly less-qualified Caucasian woman), Tubo clarified that, "after that period of training, [Ms. Beakes] was not kept in the job." J. App'x 519. Nor did Eva Edwards permanently replace Tubo; Ms. Edwards—who previously served as an "interim nurs[ing] director," J. App'x 85, and had trained Tubo—merely slotted into Tubo's role on an interim basis because the Hospital needed someone "who knew the organization, who knew the management aspects of the organization, and who could then get the clinical help that was needed," J. App'x 462–63. This is the type of business decision that does not warrant scrutiny absent indicia of discrimination. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("While we must ensure that employers do not act in a discriminatory fashion, we do not 'sit as a super-personnel department that reexamines an entity's business decisions.'" (quoting *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997))); *see also Viola*, 42 F.3d at 718 (observing that, under the circumstances, there was "nothing suspect about . . . the assignment of another employee by transfer to a position she was willing to fill"). Although Tubo stated in her declaration that she "believe[d]" that she was eventually replaced by three Caucasian employees, J. App'x 519, she did not cite a basis in the record for that belief. *See Rojas v. Roman Catholic Diocese of*

4

*Rochester*, 660 F.3d 98, 105 n.9 (2d Cir. 2011) (concluding that the district court properly found affidavits to be irrelevant and inadmissible when affiants attested to information that they "believed" to be true but about which they lacked "personal knowledge"); *see also FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (observing that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

Tubo also cites the experience of a former Food Service Manager, Shirlette Stewart, who was the only African-American food service supervisor when she was terminated, and that of a Caucasian employee whom Tubo alleges was fired after siding with Ms. Stewart against the Hospital. To the extent that Tubo cites this evidence to support a claim that the Hospital had a custom or practice of discriminating against African-American managers, the claim fails because Tubo's evidence—which consists of isolated instances—does not raise a triable issue of fact as to that claim. *See Reynolds v. Barrett*, 685 F.3d 193, 203 (2d Cir. 2013) ("In contrast to individual disparate treatment claims, '[p]attern-or-practice disparate treatment claims focus on allegations of *widespread* acts of intentional discrimination against individuals.'" (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001) (emphasis added))). Moreover, given Ms. Stewart was fired at a different time and by different supervisors than Tubo, Ms. Stewart's experience does not support an inference that Tubo was terminated for discriminatory reasons.

Lastly, although Tubo asserts that an unidentified employee of the Hospital used the term "negro," such an isolated stray remark, unconnected in any way to her termination, is insufficient to justify the necessary inference. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (recognizing that "stray remarks, even if made by a decision maker, do not constitute

5

sufficient evidence to [support] a case of employment discrimination"). For these reasons, we agree with the district court that Tubo failed to establish a prima facie case of discrimination.

### ii. *Legitimate, Non-Discriminatory Reasons for Termination & Pretext*

Even if Tubo were able to assert a prima facie case of discrimination, the Hospital proffered a legitimate, non-discriminatory basis for her termination: her continued poor performance and inability to lead and manage effectively the Hospital Labor & Delivery Department. *See Zann Kwan*, 737 F.3d at 845 (observing that "poor work performance" was a legitimate non-discriminatory reason for plaintiff's termination); *see also Delaney*, 766 F.3d at 169 (same). For substantially the same reasons that Tubo has failed to establish a prima facie discrimination claim, she is unable to show, by a preponderance of the evidence, that the stated reasons for her termination were pretextual. Although Tubo and two co-workers disagreed with the Hospital's assessment of her performance, we find this evidence insufficient to satisfy Tubo's burden to show pretext, in part because Tubo's co-workers have not established that they have the knowledge and qualifications necessary to accurately assess Tubo's performance. *See Rojas*, 660 F.3d at 105 n.9; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." (alterations in original) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986))).

## B. Retaliation Claims

To establish a prima facie case of retaliation, Tubo was required to show, *inter alia*, that the Hospital had "knowledge of the protected activity." *Zann Kwan*, 737 F.3d at 844. We agree with the district court that, absent any factual basis to conclude that Dr. Oxley or Susan O'Boyle communicated Tubo's complaint about the use of the term "negro" to CEO Scott Batulis, Tubo

6

relies only on speculation that either he or Tubo's supervisor was aware of the complaint. Such speculation cannot defeat summary judgment. *See Great Am. Ins. Co.*, 607 F.3d at 292; *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999). Further, even if Tubo could establish a prima facie case of retaliation, as described above, the Hospital offered a legitimate non-retaliatory reason for her termination, and Tubo has not shown that the proffered reason was pretextual. *See Zann Kwan*, 737 F.3d at 845 (explaining that, "after the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture," and "[t]he plaintiff must then come forward with [evidence that the proffered] reason is a mere pretext for retaliation").

### C. Breach of Contract and Violation of NYLL

New York Labor Law requires employers to "notify . . . employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours." N.Y. Lab. Law § 195; *see also id.* § 198-c(1) (requiring an employer to pay agreed-upon benefits or wage supplements to certain employees). An employee's entitlement to receive payment for accrued, unused vacation time upon termination of employment is governed by the terms of the employer's publicized policy. *See, e.g.*, *Gennes v. Yellow Book of N.Y., Inc.*, 23 A.D.3d 520, 521–22 (2d Dep't 2005) (holding that in an action to recover vacation pay under the New York Labor Law, "[t]he primary and dispositive issue . . . is whether there was any basis for the accrual of vacation benefits," and looking to employer's policy for terms of accrual); *Glenville Gage Co., Inc. v. Indus. Bd. of Appeals of N.Y., Dep't of Labor*, 70 A.D.2d 283, 284 (3d Dep't 1979) ("[T]he accrual of vacations [is] a matter of agreement to provide such benefits.").

7

The Hospital's Vacation Policy explicitly stated that "[a]n employee terminated for reasons other than an economic layoff, retrenchment or a departmental reorganization or an employee who resigns without proper working notice <u>automatically forfeits</u> any accrued benefits."[1] J. App'x 251 (emphasis in original). Tubo contends that, despite the Vacation Policy, she "accepted her employment with the 'competitive package' that CEO Batulis described in his deposition testimony," and that the Vacation Policy "could not legally alter the original understanding." Appellant's Br. 55–56. Although CEO Batulis vaguely testified that the Hospital "provide[s] a very competitive benefit package," J. App'x 413, Tubo fails to explain how the Vacation Policy set forth in the Employee Handbook differed from the policy communicated to her as part of the so-called "competitive package."[2] We also agree with the district court that Tubo's termination for poor performance could not reasonably be interpreted as a "reorganization," "economic layoff," or "retrenchment."

We have considered all of Tubo's arguments and conclude that they are without merit. We therefore **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] Although Tubo asserts on appeal that she "may or may not have" read this policy provision, Appellant's Br. 55, the record shows that she signed a document confirming that she received a copy of the Employee Manual, which contained the Hospital's Vacation Policy and a disclaimer that she understood that she was "responsible for becoming familiar with the policies and information contained in the handbook," J. App'x 193.

[2] If Tubo contends there was a verbal contract, she has not demonstrated, as she must, that the terms of any agreement were definite. *See Delaney*, 766 F.3d at 171 (observing that, under New York law, in order to establish that an unwritten contract is binding, "the plaintiff must demonstrate that the terms of any agreement are definite").

8